**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | |
|---|---|
| In re:<br><br>HANNAH WOLDEYOHANNES,<br><br>*Debtor* | Case No.:  18-21369 (AMN)<br>Chapter 7<br><br><br><br>ECF Nos. 152, 153, 216, 223, 288, 294, 295, 304, 305, 312 |

## MEMORANDUM OF DECISION AND ORDER
## REOPENING CHAPTER 7 CASE FOR OTHER CAUSE

*Appearances*

| | |
|---|---|
| *Former Chapter 7 Trustee* | Bonnie C. Mangan, Esq.<br>Law Office of Bonnie C. Mangan<br>1050 Sullivan Avenue, Suite A3<br>South Windsor, CT 06074 |
| *For the Movant (as to ECF No. 152)*<br>*AWET, LLC:* | Edward C. Taiman, Jr., Esq.<br>Sabia Taiman, LLC<br>999 Asylum Ave., #114<br>Hartford, CT 06105 |
| *For the Movant (as to ECF Nos. 216, 288, 294, 295, 304, 305, 312) and Respondent (as to ECF No. 152)*<br>*Alyssa Peterson* | Alyssa Peterson,<br>Self-Represented Litigant<br>297 Grandview Terrace<br>Hartford, CT 06114 |
| *For the Objecting Parties (as to ECF No. 223)*<br>*Sofia Woldeyohannes,*<br>*Yodit Woldeyohannes,*<br>*and Mussie Russom* | Ronald Ian Chorches, Esq.[1]<br>Law Offices of Ronald I. Chorches, LLC<br>82 Wolcott Hill Rd. Suite 203<br>Wethersfield, CT 06109 |

---

[1]    Attorney Chorches filed an objection to ECF No. 223 on behalf of Mussie Russom, Sofia Woldeyohannes and Yodit Woldeyohannes, but did not participate in the evidentiary hearing.

## I. *INTRODUCTION*

This dispute arose in approximately 2004 when creditor Alyssa Peterson ("Creditor") sued the debtor Hannah Woldeyohannes ("Debtor") in state court, claiming the Debtor usurped a business opportunity. In 2009 the Creditor won a monetary judgment. Two bankruptcies followed, and state court litigation continues.

The present litigation arises from a sale order entered in this case (the "2018 Case") -- the Debtor's second bankruptcy case – commenced on August 20, 2018, when the Creditor filed an involuntary Chapter 7 bankruptcy petition against the Debtor (the "Petition Date"). On March 25, 2021, I entered an Order Granting Motion to Approve Private Sale ("Sale Order") approving the Chapter 7 Trustee's proposed sale of whatever membership interest the Debtor owned in a limited liability company called A to Zee, LLC ("A to Zee") on the date of the order for relief, September 25, 2018.[2] The Sale Order was slightly different than what the Chapter 7 Trustee (the "Trustee") originally proposed in her motion and added a reference to equitable interests in real property owned by A to Zee. This reference to real property owned by non-debtor A to Zee – appearing in the Trustee's other documents associated with the sale process including the Sale Order but not in her motion – resulted in the dispute now before the court.

A second limited liability company called AWET, LLC ("AWET") – formed after the 2018 Case was closed – filed a motion to reopen the 2018 Case to address the discrepancy in the Sale Order, but I denied it reasoning AWET lacked standing. An

---

[2]     ECF Nos. 122, 136.  Because this is an involuntary Chapter 7 Case, the Petition Date and the date the order for relief entered are different.  11 U.S.C. § 303(h).  In voluntary cases, the dates are the same.  The Trustee referenced the Petition Date in the Sale Motion, but the different dates appear to make no material difference here.

2

appeal followed and the District Court vacated the order denying AWET's motion to reopen, remanding the case to the bankruptcy court.

This Memorandum of Decision will review relevant facts, relevant procedural history, applicable law, evidence presented during an evidentiary hearing and the court's legal conclusions.  Familiarity with the underlying sale motion, the Sale Order, the pending motion to reopen the case, and the District Court's order is assumed.[3]

## II.   *BACKGROUND*

### a.  *The Bankruptcy Court Sale Order*

This Memorandum of Decision addresses confusion created by language in the Sale Order added by the Chapter 7 Trustee, Bonnie C. Mangan (the "Trustee"), which differs from the language she used in her sale motion.  The differing language suggests the Trustee sold an interest of some sort in real property owned by A to Zee, in addition to the bankruptcy estate's ownership interest in A to Zee itself, if any.  The bankruptcy estate never owned real property and the bankruptcy schedules disclosed no ownership interest in a limited liability company.  The Trustee sold whatever interest – which may have been nothing – the bankruptcy estate had in a limited liability company.  The Trustee's motion and Bill of Sale, and the Sale Order could have been clearer.  This Memorandum of Decision and Order seeks to address the mistake in the Sale Order.

### b.  *The Parties*

This matter is the latest iteration in a decades-long dispute among multiple parties, not all of whom appeared or participated in this case.  The Debtor, Hannah Woldeyohannes, owned an interest in a limited liability company, A to Zee, in the early

---

[3]      *See* ECF Nos. 122, 136, 152, 196.

2000's.[4]  The amount of this ownership and its disposition is contested.  A to Zee bought, owns, and leases four condominium units known as 230-232 Farmington Avenue, Hartford, Connecticut, Laurelhart Condominiums Unit Numbers B-2, E-3, D-6 and E-7" ("Condos").[5]

In 2004, the Creditor filed an action against the Debtor in Connecticut Superior Court claiming the Debtor and A to Zee usurped a business opportunity by purchasing the Condos, which the Creditor had planned to purchase with the Debtor.[6]  The Creditor later withdrew her claim against A to Zee.  After years of litigation, the state court awarded a money judgment to the Creditor against the Debtor.[7]

Today, A to Zee is purportedly owned and managed by the Debtor's family members.  AWET argues A to Zee is owned by Yodit Woldeyohannes, Sofia Woldeyohannes, and Isaias Yohannes (the "Woldeyohannes siblings") as members and Mussie Russom, Sofia Woldeyohannes's husband, is A to Zee's manager.[8]  The Creditor, on the other hand, argues she is the rightful owner of A to Zee.  In the 2018 Case, the Debtor asserted no ownership interest in A to Zee.  On the Petition Date and when the order for relief entered, the Debtor was listed as the Managing Director for A to Zee with the Connecticut Secretary of the State.

Over the years, the Debtor, the Woldeyohannes siblings, and A to Zee all employed Attorney Patrick Boatman and his firm, the Law Office of Patrick Boatman (the

---

[4]    *Peterson v. Woldeyohannes,* No. CV040834966S, 2009 WL 4686026, at *1 (Conn. Super. Ct. Nov. 13, 2009) (unreported; citing *Peterson v. Woldeyohannes*, 111 Conn. App. 784, 785 (2008)).

[5]    *See Peterson v. Woldeyohannes,* No. CV040834966, 2006 WL 2948850, at *2 (Conn. Super. Ct. Oct. 3, 2006)*, rev'd,* 111 Conn. App. 784, 961 A.2d 475 (2008); *see also, Peterson v. Woldeyohannes*, 2009 WL 4686026, at *2.

[6]    *Peterson v. Woldeyohannes*, 2009 WL 4686026, at *1.

[7]    *Peterson v. Woldeyohannes*, 2009 WL 4686026, at *7.

[8]    *See,* ECF No. 230-14, pp. 6-7; ECF no. 282, p. 131, Ln. 7-9.

4

"Boatman Firm").  The Boatman Firm did not appear in the 2018 Case, but was served with notice of the case in July 2019.[9]  Earlier, in February 2016, A to Zee purported to grant the Boatman Firm a mortgage deed on the Condos to secure a promissory note in the amount of $140,000 (the "Mortgage").[10]  The Mortgage was recorded in the Hartford, Connecticut land records in May 2016.

After the 2018 Case was closed, the Boatman Firm assigned the Mortgage to AWET, and the assignment was recorded in the land records in December 2021.[11]  The sole member and agent of AWET is Mr. Russom.[12]  The authority of A to Zee to grant the Mortgage to the Boatman Firm, and the validity and enforceability of the Mortgage at the time it was granted and recorded are at the center of AWET's allegations in the bankruptcy court.

### c. The 2018 Chapter 7 Bankruptcy Case

On the Petition Date, the Creditor Ms. Peterson and another creditor filed an involuntary Chapter 7 bankruptcy petition against the Debtor pursuant to 11 U.S.C. § 303.[13]  The Debtor did not contest the petition and the court entered an order for relief on September 25, 2018.[14]

---

[9]    *See,* ECF No. 60.

[10]    ECF No. 224-25.  The Clerk's Post-Evidentiary Hearing Witness and Exhibit List is filed as ECF No. 303.  Copies of each of the movant's (AWET's) exhibits offered or admitted into evidence are included as ECF No. 303-1. Copies of each of Alyssa Peterson's exhibits offered or admitted into evidence are included as ECF No. 303-2.  These PDF documents include bookmarks using the Adobe Acrobat bookmark feature for the reader's ease of reference.  The exhibit references in this Memorandum of Decision are to the bookmarked exhibits using the identification the parties' used during the evidentiary hearing.  Generally, AWET's exhibits are referenced as ECF No. 224-XX, while Alyssa Peterson's exhibits are referenced as ECF No. 230-XX.  The official copy of each exhibit is included as part of ECF No. 303.

[11]    ECF Nos. 224-26.

[12]    ECF No. 282, p. 43, Ln. 2-5; State of Conn. Sec'y of State, Business Inquiry: AWET, LLC, https://service.ct.gov/business/s/onlinebusinesssearch?businessNameEn=YHowvgqw1ndSywEi%2BgOm H6nahggG V%2FBa74TsMQph5jw%3D.

[13]    ECF No. 1; Title 11, United States Code, is the "Bankruptcy Code."  References to statutory sections are to the Bankruptcy Code unless otherwise specified.

[14]    ECF No. 13.

After much effort by the creditors and the Trustee, the Debtor eventually filed bankruptcy schedules and a statement of financial affairs.[15]  The Debtor's Schedule A/B (in the portion listing interests in personal property) stated:

> Debtor is still listed as Managing Director of A to Zee, LLC at the State of Connecticut Sec. of State's office, (CONCORD website), however she no longer has any interest in A to Zee LLC and has not had any interest in A to Zee LLC since family members took it over in 2006.  A to Zee, LLC is listed for disclosure purposes only because Debtor's name is still of record with the CT Secretary of State's office.
> ECF No. 81, p. 5.

The record here is consistent that the Debtor was listed with the Secretary of the State as a former managing director of A to Zee on the Petition Date (August 20, 2018) until October 19, 2020.[16]

### i.  *The Sale Motion, the Proposed Order and the Sale Order*

On February 23, 2021, the Trustee filed a "Motion to Sell Debtor's ownership interest in A to Zee, LLC Free and Clear of Liens" (the "Sale Motion") seeking authority to sell, by private sale, certain estate property to the Creditor pursuant to Bankruptcy Code §§ 363(b) and (f) and Fed.R.Bankr.P. 6004(c).[17]  The Sale Motion described the property to be sold (the "Asset") as:

> [T]he bankruptcy estate's right, title and interest, if any, in and to the Debtor's, (Hannah Woldeyohannes') ownership interest as of the petition date in A to Zee, LLC, and any and all equitable rights held by the Debtor, Hannah Woldeyohannes, in [the Condos], and any claims that may emanate from said alleged interest.
> ECF No. 122, ¶ 6.

---

[15]    ECF No. 81; Bankruptcy Code § 521.
[16]    ECF No. 230-14, pp. 6-8.
[17]    ECF No. 122.

The Sale Motion disclosed, "[o]n Schedule A/B at Question 19, the Debtor claims that she no longer has an interest in A to Zee … .  As of the Petition Date, records at the Connecticut Secretary of State reflected that the Debtor was the managing member of A to Zee, LLC since its inception in 2004.  At various different times, the Connecticut Superior Court, the State of Connecticut Court of Appeals, and the United States Bankruptcy Court have all made findings that the Debtor was either the sole owner of A to Zee, LLC or held a 100% interest in the asset A to Zee, LLC."[18]

The Sale Motion also specified, "[t]he sale of the bankruptcy estate's interest in the Asset is without representation or warranties, express or implied, however, the Chapter 7 Trustee defers to any prior judicial findings and decisions issued by the United States Bankruptcy Court, the State of Connecticut Superior Court, and the State of Connecticut Appellate Court including, but not limited to, the status of ownership or encumbrances related to the Asset."[19]  The Sale Motion stated the Asset would be sold "free and clear of all liens, claims and encumbrances" and "without representation or warranties."[20]

The court understood, and the Trustee confirmed, the Asset to be sold was the Debtor's interest in A to Zee, and any equitable rights held by the Debtor's estate in the Condos.[21]  According to the Trustee's recent testimony in 2024, she had not intended to sell any interest in real property.[22]  The Trustee never identified what "equitable rights" the Debtor might have in the Condos owned by the non-debtor A to Zee.  The proposed order filed with the Sale Motion described the Asset as,

---

[18]     ECF No. 122, ¶ 5.
[19]     ECF No. 122, ¶ 14.
[20]     ECF No. 122, ¶¶ 13, 14.
[21]     ECF No. 315, p. 5, Ln. 14-25.
[22]     ECF No. 282, p. 181, Ln. 2-11.

. . . the bankruptcy estate's right, title and interest, if any, in and to the [Debtor's] recorded ownership interest at the time of the bankruptcy filing in A to Zee, LLC, a Connecticut Limited Liability Company, registered with the Secretary of State, *and any and all equitable rights held by the Debtor, Hannah Woldeyohannes and A to Zee, LLC, in [the Condos] and any claims associated with the Debtor, A to Zee, LLC or any claims emanating therefrom . . ..*[23]

The proposed order, unlike the Sale Motion, sought the ability to sell "any and all equitable rights held by the Debtor *and A to Zee, LLC,* in [the Condos.]"[24]  The Debtor did not schedule any interest in the Condos in the real property section of her Schedule A/B (Schedule A reflects real property interests while Schedule B reflects personal property interests).[25]  The following day, the Trustee filed a Notice of Intended Private Sale of Property and Solicitation of Counteroffers (the "Notice").[26]  The Notice included the reference to any and all equitable rights held by A to Zee in the Condos.[27]  The Notice provided, "[t]he Asset will be sold free and clear of all liens, claims and encumbrances."[28]  The Notice was not served on the Boatman Firm, at that time the holder of the Mortgage.[29]  No attempt was made to identify what "liens, claims and encumbrances" might exist.  No certificate of service was filed indicating the Boatman Firm or any other lienholder was on notice of the Sale Motion or the hearing.  The Boatman Firm was not listed as a creditor of the Debtor in the 2018 Case, did not file a proof of claim in the case, and did not file a notice of appearance.

---

[23]     ECF No. 122-1, pp. 1-2.
[24]     ECF No. 122-1, pp. 1-2 (emphasis added).
[25]     ECF No. 81, p. 3.
[26]     ECF No. 125.  Note: The Local Bankruptcy Rules addressing sales of real property were amended in 2018 and 2021.  This procedure would be different under the current Local Bankruptcy Rules.
[27]     ECF No. 125, p. 1.
[28]     ECF No. 125, p. 2.
[29]     ECF Nos. 224-25, 224-26.

On March 17, 2021, Sofia Woldeyohannes filed a one-sentence objection to the Sale Motion and the Notice: "Hannah Woldeyohannes has no equity interest in A to Zee, LLC".[30]  Attached to the objection was a document labeled "A to Zee, LLC Operating Agreement" dated February 25, 2016, which represented the Debtor had transferred her interest in "A to Zee, LLC and its condominium units" to Isaias Yohannes, Sofia Woldeyohannes, and Yodit Woldeyohannes.[31]  No affidavit or other evidence that would be admissible pursuant to Fed.R.Civ.P. 43, Fed.R.Civ.P. 44 or Fed.R.Bankr.P. 9017 was filed with the objection.  The Creditor filed a reply reaffirming her bid amount of $5,000 while acknowledging the bid was for an "unknown commodity."[32]

## ii. *The 2021 Hearing on the Sale Motion and the Entry of the Sale Order*

The court held a hearing regarding the Sale Motion on March 24, 2021.  The Chapter 7 Trustee clarified the sale was for the bankruptcy estate's interest in A to Zee as well as any equitable rights held by the Debtor in the Condos.[33]  Sofia Woldeyohannes appeared at the hearing telephonically and objected to the proposed sale on the basis the Debtor did not have an interest in A to Zee.[34]

The court inquired how the Trustee determined the ownership of A to Zee, the nature of the Debtor's interest in A to Zee, and the value of the equity in the Condos.[35]  The Trustee explained she reviewed the Debtor's schedules, in which the Debtor had said she did not own any interest in A to Zee.[36]  The Trustee expressed skepticism

---

[30] ECF No. 128.
[31] ECF No. 128, pp. 2, 11.
[32] ECF No. 133.
[33] ECF No. 315, p. 5, Ln. 17-25.
[34] ECF No. 315, p. 10, Ln. 1-13, 17; ECF No. 224-8.
[35] ECF No. 315, p. 6, Ln. 3-6.
[36] ECF No. 315, p. 6, Ln. 7-10.

regarding the Debtor's representation, referencing an earlier bankruptcy court adversary proceeding in 2011, in which the court revoked the Debtor's discharge on the basis the Debtor had misrepresented her ownership interest in A to Zee.[37]   In that adversary proceeding the bankruptcy court had revoked the Debtor's discharge in the 2011 Case. The Debtor consented to judgment entering against her on Count One of the United States Trustee's complaint that alleged the debtor concealed her "100% interest in [A to Zee]".[38]   The Debtor had only scheduled a 25% interest in A to Zee.[39]   The Chapter 7 Trustee's final report in the 2011 Case noted the Debtor's 25% interest in A to Zee was scheduled, but a "possible interest in A to Zee" was unscheduled.[40]   The Chapter 7 Trustee also referenced a ruling by the Connecticut Superior Court finding the Debtor was the sole owner of A to Zee as of 2009.[41]

There was no discussion during the hearing – and the Sale Motion and Sale Order are silent – regarding a sale of real property or the Mortgage.  The question of whether A to Zee owned the Condos in 2016 – the time the purported mortgage was granted to the Boatman Firm by A to Zee – was also unaddressed.

On March 25, 2021, the bankruptcy court entered the Sale Order approving the Sale Motion and Notice and overruling Sofia Woldeyohannes's objection.[42]   The court overruled Sofia Woldeyohannes's objection because it was unsupported by admissible evidence.[43]   The bankruptcy court served the Sale Order using the list of creditors for the

---

[37]     ECF No. 315, p. 6, Ln. 10 to p. 7, Ln. 2.
[38]     *Tracy Hope Davis, United States Trustee for Region v. Woldeyohannes*, Adv. Proc. Case No. 12-2021, AP-ECF Nos. 35, 1, ¶ 36.
[39]     Case No. 11-20003, ECF No. 14, p. 3.
[40]     Case No. 11-20003, ECF No. 187, p. 5.
[41]     *See, Peterson v. Woldeyohannes*, 2009 WL 4686026, at *1 (citing *Peterson v. Woldeyohannes*, 111 Conn. App. 784, 785 (2008)).
[42]     ECF No. 136.
[43]     ECF No. 315, p. 15, Ln. 3-10.

2018 Case.  Neither the Boatman Firm nor Sofia Woldeyohannes were on the service list because neither had filed a proof of claim nor a notice of appearance.[44]

### iii.  *The Chapter 7 Trustee's Bill of Sale*

On April 13, 2021, the Chapter 7 Trustee executed and delivered a quit claim bill of sale and assignment (the "Bill of Sale") to the Creditor.[45]  The Trustee's Bill of Sale is a document prepared, executed and delivered by the Trustee after the Sale Order entered.  The Bill of Sale repeated the erroneous language stating the Chapter 7 Trustee was transferring "and any and all equitable rights held by . . . A to Zee" in the Condos.[46]

On April 30, 2021, the Creditor recorded the Bill of Sale in the Hartford, Connecticut, Land Records at Volume 7748, Page 266.[47]  On May 11, 2021, the Chapter 7 Trustee filed her final report, reporting the sale of the Debtor's interest in A to Zee.[48]  On August 5, 2021, Trustee Mangan filed the "Chapter 7 Trustee's Final Account and Distribution Report, Certification that the Estate has been Fully Administered and Application to be Discharged."[49]  Hanson Guest, the only other unsecured creditor who filed a proof of claim, received a dividend of $3,095.12 and the remainder of the estate,

---

[44]    ECF No. 136-2; Sofia Woldeyohannes mailed her objection to the court and did not include an address or any other way to provide her notice of the Sale Order.  At the time of the hearing Sofia had not filed a proof of claim, was not listed as a creditor or party in interest to receive notice, and was not listed in the Debtor's Schedules.  Sofia Woldeyohannes has since appeared through counsel and has been added to the list of creditors for service.  ECF No. 206.  Sofia Woldeyohannes, after appearing through counsel and objecting to various motions by the Creditor, did not participate in this evidentiary hearing on the motion to reopen.  Neither Attorney Boatman (the Debtor's attorney in the 2011 Case) nor the Boatman Firm has appeared in the 2018 Case.

[45]    ECF No. 224-12.
[46]    ECF No. 224-12
[47]    ECF No. 153, pp. 4-5.
[48]    ECF No. 142, p. 3.
[49]    ECF No. 148.

$1,904.88, was disbursed to the Trustee for administrative fees and expenses.[50]  On September 9, 2021, the Clerk's Office administratively closed the Bankruptcy Case.[51]

### iv.  *AWET's Motion to Reopen the 2018 Case*

On July 6, 2022, ten months after closure of the 2018 Case, AWET filed a motion to reopen.  AWET is a Connecticut limited liability corporation incorporated on September 7, 2021.  AWET represented it was not a creditor of the Debtor's estate but rather was the owner and holder of the Mortgage on the Condos.[52]  AWET stated the Boatman Firm had assigned the Mortgage to AWET on October 29, 2021, shortly after the 2018 Case was closed.[53]  AWET argued the Condos were owned by A to Zee, and the Sale Order should not have purported to sell A to Zee's interest in the Condos nor sold real property owned by A to Zee free and clear of liens, including AWET's Mortgage.[54]

Simultaneously, AWET moved pursuant Federal Rule of Civil Procedure 60(a) for relief from the Sale Order, seeking to vacate the order and enter an order "approving the sale consistent with the Trustee's motion for Order . . .."[55]  On August 3, 2022, after notice and a hearing, the court issued a decision denying the AWET Motion.[56]  The court first concluded AWET lacked standing to seek to reopen the case because it was not a "party in interest".[57]  Second, it determined the relief sought pursuant to Federal Rule 60(a) should not be granted because AWET failed to show sufficient cause pursuant to

---

[50]     ECF No. 142, p. 8-9.
[51]     ECF No. 150.
[52]     ECF No. 152, pp. 1-2.
[53]     *See,* ECF No. 224-27.
[54]     ECF No. 152, pp. 1-2.
[55]     ECF No. 153. pp. 1-3.
[56]     ECF No. 177.
[57]     ECF No. 177, pp. 5-6.

Bankruptcy Code § 350.[58]   Because the case was not reopened, no order entered regarding AWET's motion for relief from judgment.

### v. *AWET's Appeal and the District Court Decision*

On August 12, 2022, AWET timely appealed the denial of its motion to the United States District Court for the District of Connecticut (the "Appeal").[59]

The Appeal issues were, "(1) whether the Bankruptcy Court erred when it held AWET is not a party in interest within the meaning of Bankruptcy Rule 5010 and therefore lacked standing to seek the reopening of the bankruptcy estate; and (2) whether the Bankruptcy Court erred by concluding cause did not exist to award relief under Fed. R. Civ. P. 60(a)." *In re Woldeyohannes*, No. 3:22-CV-1030 (SRU), 2023 WL 8717014, at *5 (D. Conn. Dec. 18, 2023) (cleaned up); ECF No. 196.   Regarding the first question, the District Court held, "in the context of a motion to reopen, the term party in interest should be read to include all persons with a direct pecuniary interest in the bankruptcy proceedings."  *In re Woldeyohannes*, 2023 WL 8717014, at *6 (cleaned up).  The District Court further opined that, to determine standing, "the Bankruptcy Court should have determined whether AWET did in fact own a valid mortgage on the subject property that was improperly extinguished by the Bankruptcy Court, and whether it (or its predecessor in interest) was not notified of the proposed sale of the subject property."  *In re Woldeyohannes*, 2023 WL 8717014, at *6.

As to the second question, whether cause existed to reopen the case, the District Court determined the bankruptcy court, "failed to consider several important factual

---

[58]    ECF No. 177, pp. 6-7.
[59]    United States District Court for the District of Connecticut, Dkt. No. 3:22- cv-1030, Doc. No. 1; ECF No. 179.

issues pertinent to the question of whether cause existed to reopen the closed bankruptcy case" and on remand needed to further develop the record to determine what was sold, whether the sale approved the sale of assets not owned by the debtor, and whether the prior holder of the mortgage on the Condos, the Boatman Firm, received notice of the sale. *In re Woldeyohannes*, 2023 WL 8717014, at *7-8. The District Court vacated the bankruptcy court's Amended Memorandum of Decision and Order Denying Movant's Motion to Reopen vacated and remanded to the bankruptcy court with instructions to determine, "the ownership interest of the bankruptcy estate in the subject property at the time of its sale, as well as whether any mistake in the proceedings or Sale Order resulted in the improper sale of the subject property free and clear of a mortgage owned by AWET." *In re Woldeyohannes*, 2023 WL 8717014, at *8; ECF No. 177.

### d.  *The Pending Motions*

On remand, the bankruptcy court held an evidentiary hearing in which AWET, the Creditor and the former Chapter 7 Trustee participated.[60]  A threshold issue to AWET's motion to reopen is whether AWET has standing as a party in interest.[61]  AWET's standing argument is based on its claim it holds a valid and enforceable mortgage on real property owned by a non-debtor who is harmed by the Sale Order.  Other related motions are discussed as relevant to AWET's motion to reopen.

### i.  *How is AWET Related to this Case?*

AWET claims it is harmed by the bankruptcy court's Sale Order because the Creditor recorded the Sale Order on the land records and used it to allege in a state court

---

[60]   The former Chapter 7 Trustee participated as a witness but did not express an opinion on the pending motion to reopen.  The Debtor neither appeared nor participated in the evidentiary hearing.
[61]   *In re Woldeyohannes*, No. 3:22-CV-1030 (SRU), 2023 WL 8717014, at *6.

foreclosure action that Ms. Peterson – and not A to Zee – owns the Condos.  A to Zee remains the focus of the parties' disputes in this 2018 Case because it continues to hold title to the Condos.  In order to reopen the 2018 Case, AWET needed to demonstrate cause to reopen the 2018 Case in addition to establishing standing.  Because the Sale Order purports to sell an interest in real property owned by the non-debtor A to Zee, to have standing here, AWET needed to establish it holds a valid, enforceable mortgage against the Condos, or some other pecuniary interest affected by the Sale Order.

AWET claims it holds a valid, perfected, and enforceable mortgage against the Condos, granted by A to Zee in 2016.  Whether it does depends in part on whether the signatories to the mortgage on behalf of A to Zee were authorized to grant the mortgage.  As discussed at length below, AWET needs to establish by a preponderance of the evidence: (1)  who the members of A to Zee were in 2016; and (2) that Sophia Woldeyohannes was authorized to act on behalf of A to Zee when she signed the Mortgage to the Boatman Firm in February 2016.

### ii.   *The Creditor's Challenge to AWET's Standing*

The Creditor and purchaser under the Sale Order negotiated the sale with the Chapter 7 Trustee, and was involved in crafting the language of the Sale Motion and presumably the Sale Order.  She opposes AWET's claim to standing here, as well as the validity and enforceability of AWET's mortgage on the Condos.  Once the Sale Order entered, the Creditor commenced a foreclosure of the mortgage in state court, asserting she had purchased all of the equity interest in A to Zee, among other claims.  To be clear, the Chapter 7 Debtor here scheduled a 0% interest in A to Zee and the Chapter 7 Trustee sold the possibility the Debtor had an interest in the limited liability company.  The Trustee

15

was candid the equity interest history of A to Zee was murky and she was selling the Debtor's hypothetical interest to the Creditor without representation or warranty.

The Creditor's challenge to AWET' s mortgage and thus to AWET's standing centers on her claim Hannah Woldeyohannes was the sole owner of A to Zee in 2016 when the Mortgage was granted.  She argues in support that the Debtor was subject to an injunction preventing her from encumbering assets of A to Zee and that some or all of the Debtor's interest in A to Zee remains in the estate of the 2011 Case.  Alternatively, the Creditor argues the Sale Order entered correctly because the estate of the 2018 Case included A to Zee's interest in the Condos due to an earlier state court ruling she claims pierced the corporate veil.

Whether, when and to what extent the Debtor owns or owned A to Zee is disputed, and the parties made various arguments about the effect of multiple state court cases, bankruptcy cases, and alleged conduct constituting disassociation from the limited liability company.

After the District Court Order entered, the Creditor filed but later withdrew a competing motion to reopen the 2018 Case, seeking to clarify that, as the purchaser in the Sale Order transaction, she had standing to pursue the claims a trustee might pursue specified in Chapter 5, Title 11, United States Code, including avoidance actions and malpractice claims against A to Zee's prior counsel.[62]  The Chapter 5 claim has not merit and the bankruptcy court will not reopen the 2018 Case to address it.[63]

---

[62]    ECF No. 216, p. 1.

[63]    "Chapter 5 of the Bankruptcy Code grants the trustee certain powers that neither the debtor nor the creditors enjoyed prior to bankruptcy. Some overlap with those inherited from the creditors, such as the fraudulent transfer provisions in § 548. Others are unique to bankruptcy, and include the power to avoid statutory liens, 11 U.S.C. § 545, pre-petition and post-petition preferential transfers, 11 U.S.C. §§ 547, 549, and set offs. 11 U.S.C. § 553."  *In re Teligent, Inc.*, 307 B.R. 744, 747–48 (Bankr. S.D.N.Y. 2004).  The entry of an order for relief in a bankruptcy case creates an estate consisting of all assets of the debtor –

### e. _The Evidentiary Hearing_

An evidentiary hearing was held on March 19, 2024, April 23, 2024, and May 16, 2024. The Creditor and AWET introduced evidence. Mussie Russom, the alleged manager of A to Zee, the former Chapter 7 Trustee, and the Creditor testified during the hearing. No member of A to Zee, current or past, testified during the evidentiary hearing.[64]

Mr. Russom's testimony started with the business practices of A to Zee, the Woldeyohannes siblings and the membership of A to Zee at different periods over the past two decades. He also testified as to the validity of the Mortgage, note, and assignment.

The Trustee testified she did not intend to, and maintains she did not, sell anything more than the Debtor's interest in A to Zee. She specifically denied selling A to Zee's interest in real property.[65] The Trustee testified it was her practice to notify all parties with an interest in real property if she was selling real property, but when selling a membership interest, she would only inform those with a lien on the membership interest (_i.e._, a lien on the personal property)[66] The Trustee also testified she gave the Boatman Firm actual notice of the hearing concerning the Sale Motion but did not inform Attorney Boatman the

---

known and unknown. Separately and simultaneously, avoidance actions (as post-petition actions) vest in the estate. The avoidance actions the Creditor seeks to pursue are all actions the Trustee could have chosen to pursue but did not. Such a sale of Chapter 5 claims would be impermissible pursuant to _In re Milazzo_, 450 B.R. 363, 380 (Bankr. D. Conn. 2011). The Second Circuit employs an exacting two-part test to determine whether the sale of avoidance actions is appropriate. _Glinka v. Fed. Plastics Mfg. (In re Housecraft Indus. USA, Inc.)_, 310 F.3d 64, 70 (2d Cir. 2002); accord _Labbadia v. Martin_ (_In re Martin_), No. 3:20-CV-939 (SRU), 2021 WL 1670292, at *7, n.10 (D. Conn. Apr. 27, 2021). The court's lack of discussion concerning this test when considering whether to grant the Sale Motion is consistent with its understanding the proposed sale of assets did not include Chapter 5 claims. The Creditor's argument the bankruptcy estate somehow included avoidance actions held by the 2011 Case is without merit.

[64] Mr. Russom testified Sofia Woldeyohannes is now living in Eritrea, and Hannah Woldeyohannes is living in California. ECF No. 282, p. 50, Ln. 11-18.

[65] ECF No. 282, p. 233, Ln. 5-19.

[66] ECF No. 282, p. 214, Ln. 12 to p. 215, Ln. 21.

sale might affect the Mortgage on the Condos by selling A to Zee's real property interest free and clear of liens.[67]

The Creditor testified on a variety of matters, including prior state and bankruptcy court decisions she believes affect this case. Her direct testimony mainly consisted of entering exhibits she planned to use during argument.

Both AWET and the Creditor offered voluminous evidence about past litigations involving the Debtor, the Creditor, and A to Zee, including a purported injunction the state court granted at the behest of the Creditor that purportedly prevented the Debtor from transferring her interest in A to Zee.[68] Much of the evidence offered was not admissible.

The court examined all admitted evidence. Evidence relevant to the court's determination is discussed below. The following chronology is based on testimony and other admissible evidence, and publicly available records for which the parties asked the court to take judicial notice.

### i. *The Debtor's Ownership, Control and Alleged Disassociation from A to Zee in 2006*

At some point in the early 2000s, the ownership of A to Zee became a subject of dispute among Ms. Woldeyohannes and her family members including Yodit Woldeyohannes, Sofia Woldeyohannes, and Mussie Russom (Sofia's husband). According to Mr. Russom's testimony here, around the time of the initial dispute with the Creditor, the family discovered the Debtor had used money that belonged to the Woldeyohannes siblings to purchase the Condos, without their knowledge or consent.

---

[67]    ECF No. 282, p. 236, Ln. 10-25.
[68]    ECF Nos. 224-13, 224-17, 224-19, 224-20, 224-21, 224-22, 230-4, 230-6, 230-11, 230-12, 230-13, 267.

Mr. Russom testified that in 2006 the Debtor's siblings took over A to Zee and Hannah Woldeyohannes was "out" of A to Zee after that time.[69]

While explaining the family's way of operating A to Zee despite their disputes, Mr. Russom testified that, "officially" the Debtor was the only one "known in the department of [the Secretary of the State]" and was the only one who could act on behalf of A to Zee.[70] Mr. Russom also testified that during the 2006 time period the Debtor was submitting A to Zee's taxes, executing leases on behalf of A to Zee, and nothing officially changed after the Debtor's purported dissociation in 2006.[71] Mr. Russom went on to testify, the Debtor "has been written in the Department of [the Secretary of the] State as managing member even until 2019, '20, because we did not know that should be changed. . . . And once we discovered that that has to be changed because she's officially still the owner of it, that's when we changed it to the rightful owners."[72] A change of agent form Mr. Russom filed with the Secretary of the State in October 2020 reflects this.[73]

### ii. *The 2009 State Court Decision*

As noted, in 2004, the Creditor sued the Debtor for breaching their oral agreement and depriving her of a business opportunity when A to Zee purchased the Condos.[74] Judgment was entered in favor of the Creditor as a result of a disciplinary default.[75] Importantly, the Creditor initially named both the Debtor and A to Zee as defendants in her lawsuit, but she later withdrew the claim against A to Zee. As a result, in 2009, the state court entered a money judgment for the Creditor and against the Debtor in the

---

[69]     ECF No. 282, p. 24, Ln. 7-21.
[70]     ECF No. 300, p. 123, Ln. 2 to p. 124, Ln 25.
[71]     ECF No. 282, p. 110, Ln. 7 to p. 111, Ln. 3, p. 77, Ln. 24 to p. 78, Ln. 10.
[72]     ECF No. 300, p. 124, Ln. 19-25.
[73]     ECF No. 230-14, pp. 6-8.
[74]     *Peterson v. Woldeyohannes,* 2009 WL 4686026, at *1.
[75]     *Peterson v. Woldeyohannes,* 2009 WL 4686026, at *1.

amount of $169,821.47.  The state court also determined the Creditor's "allegations that the defendant Woldeyohannes is the alter ego of A to Zee [were] admitted and the court [determined] that the [Debtor] is the sole member of A to Zee."[76]

After obtaining the judgment, the Creditor did not seek a charging order against the Debtor's membership interest in A to Zee, and the state court's earlier order prohibiting assignment of the Debtor's interest in A to Zee and prohibiting transfer or encumbrance of A to Zee's interest in the Condos expired 90 days after September 17, 2010.[77]

### iii.  *The 2011 Bankruptcy Case and A to Zee*

In 2011, with the 2009 state court judgment to the Creditor still outstanding, the Debtor filed a voluntary Chapter 7 bankruptcy case, but it did not go well.  Case number 11-20003 ("2011 Case").  Initially the bankruptcy court entered an order of discharge for the Debtor.[78]  The United States Trustee timely sought to revoke the Debtor's Chapter 7 discharge by filing an adversary proceeding complaint, commencing *Tracy Hope Davis, United States Trustee for Region 2 v. Woldeyohannes*, Adversary Proceeding Case No. 12- 2021.  The U.S. Trustee alleged in part that the Debtor lied under oath when she

---

[76]     *Peterson v. Woldeyohannes*, 2009 WL 4686026, at *1.

[77]     The state court granted an extension of the temporary injunction set forth in *Peterson v. Woldeyohannes,* No. CV040834966S, 2009 WL 4686026, at *7 for "90 days following the resolution of the appeal which was taken by Defendant in connection with the November 13, 2009, Memorandum of Decision; or until further order of the court."  Motion for Extension of Temporary Injunction at ECF No. 224-20; granted at *Peterson v. Woldeyohannes,* No. CV040834966S, Doc. No. 206; ECF No. 224-21. During the evidentiary hearing in the bankruptcy court, the Creditor argued a separate court continued the injunction in a different case.  ECF No. 309, pp. 53-59.

The Creditor's arguments fail for several reasons.  First, the injunction, by its own terms, became ineffective 90 days after September 17, 2010, when the Connecticut Appellate Court dismissed the Debtor's appeal in the state court case.  *See, Peterson v. Woldeyohannes*, No. HHDCV040834966S, Doc. No. 208.10; ECF No. 224-14, p. 6.  Second, the court order the Creditor believes continued the injunction was for a prejudgment remedy to attach property of A to Zee, Sofia Woldeyohannes, Yodit Woldeyohannes, and Isaias Yohannes.  *Peterson v. Hume,* Connecticut Superior Court, Case No. HHD-CV-11-5035394S, Doc. No. 114.  The pre-judgment remedy order did not name Hannah Woldeyohannes. *Peterson v. Hume,* Connecticut Superior Court, Case No. HHD-CV-11-5035394S, Doc. No. 114.

[78]     2011 Case, ECF No. 25.

listed only a twenty-five (25%) percent interest in A to Zee in her bankruptcy schedules filed under penalty of perjury, when in fact she owned a 100% ownership interest in A to Zee. The Debtor conceded the U.S. Trustee might win the dispute over the discharge but made no other admission. The Debtor agreed judgment could enter against her in the adversary proceeding brought by the U.S. Trustee to revoke her discharge pursuant to 11 U.S.C. §§ 727(a)(2) and (a)(4).[79] The Debtor also voluntarily waived entry of her discharge in the underlying Chapter 7 case, conceding the U.S. Trustee could prevail in Count 3 of her complaint.[80]

The entry of the judgment vacating the earlier discharge order effectively mooted another adversary proceeding brought by the Creditor in the 2011 Case. Since the Creditor alleged her debt was non-dischargeable pursuant to Bankruptcy Code §§ 523(a)(2) and (a)(4), once the discharge order was vacated and the Debtor was deprived of a Chapter 7 bankruptcy discharge for any of her debts pursuant to Bankruptcy Code § 727, the Creditor's complaint was moot.[81]

In vacating the 2011 Case discharge order, the bankruptcy judge (Dabrowski, U.S.B.J., retired) did not address whether A to Zee was an alter ego of the Debtor. The alter ego question was discussed during the hearing on the discharge in the 2011 Case, but the judge did not decide that issue one way or the other. Rather, the Debtor's Chapter 7 discharge in the 2011 Case was first vacated and then waived with her consent based

---

[79]    *Tracy Hope Davis, United States Trustee for Region 2 v. Woldeyohannes*, Case No. 12- 2021, AP-ECF No. 35 (Dabrowksi, U.S.B.J., retired).

[80]    Case No. 12- 2021, AP-ECF Nos. 35, 206 (transcript); see also 2011 Case, ECF Nos. 78, 79.

[81]    *See, Peterson v. Woldeyohannes*, Adv. Proc. Case No. 11-02023, AP-ECF No. 42; 11 U.S.C. §§ 523(a)(2) and (a)(4) .

on her admission there were issues with her bankruptcy schedules and her agreement the U.S. Trustee could likely prove enough of the allegations in her complaint to win.[82]

### iv. *The 2011 Bankruptcy Case and the 75% Interest in A to Zee*

Assuming for the sake of argument – but this is not a determination – the Debtor continued to own all of the membership interest in A to Zee on the petition date of the 2011 Case, it could be argued the Debtor failed to schedule a seventy-five (75%) interest she owned at that time.    While the Creditor argues the record of the 2011 Case establishes the Debtor admitted she owned 100% of A to Zee, the record of the 2011 Case is not so clear.[83]    The Debtor admitted there were problems with her bankruptcy schedules but did not specify what those problems were.

Chapter 7 bankruptcy trustees have significant discretion in exercising their business judgment to determine how to administer estate assets and minimize claims, including discretion to use the tool of abandonment.    The Chapter 7 Trustee in the 2011 Case, like all Chapter 7 Trustees, would have been paid a minimal fee of perhaps $60 to administer the bankruptcy case, plus the possibility of receiving an additional fee calculated as a percentage of money distributed to creditors.[84]    Abandonment as provided in Bankruptcy Code § 544 is important because a bankruptcy trustee is often without the wherewithal (money) to insure, protect, manage or liquidate assets of the estate unless it is clear the assets will provide value to pay to unsecured creditors, after taking into account any secured claims and the costs to turn the assets into cash.    Bankruptcy Code § 554 provides for affirmative acts of abandonment as well as automatic abandonment

---

[82]    *See* Case No. 12- 2021, AP-ECF Nos. 35, 206 (transcript); 2011 Case, ECF Nos. 78, 79.
[83]    *See* 2011 Case, ECF No. 206 (transcript); 2011 Case ECF No. 64, 64-1; ECF No. 306.
[84]    *See,*   Bankruptcy Code § 326.

upon the final administration of a case.  The Chapter 7 Trustee of the 2011 Case did not file any notice of abandonment, and the only possible manner of abandonment for the alleged unscheduled 75% interest in A to Zee – if it was owned by the Debtor, which was not established in the 2011 Case – would have been through an automatic abandonment upon the closing of the 2011 Case.

However, only property listed in a debtor's bankruptcy schedules is automatically abandoned upon the closure of a bankruptcy case.  Under § 554, property that is not abandoned and not administered remains property of the bankruptcy estate.  "There is simply no such concept of 'assumed abandonment,' . . ..  It is not enough that the trustee learns of the property through other means; the property must be scheduled pursuant to [11 U.S.C.] § 521(1)."  *Jeffrey v. Desmond*, 70 F.3d 183, 186 (1st Cir. 1995) (cleaned up). Bankruptcy judges in this District have said in *dicta* that assets not scheduled are not abandoned when the case closes, even where the trustee knows of them.  *In re Balonze*, 336 B.R. 160, 171 n.23 (Bankr. D. Conn. 2006); accord, *In re Haralambous*, 257 B.R. 697, 699 (Bankr. D. Conn. 2001) (collecting cases).

Based on this record, the 25% interest in A to Zee was abandoned to the Debtor when the 2011 Case closed, consistent with § 554.  AWET provided no evidence and no clarity as to the ownership of A to Zee immediately before, during, or as a result of the 2011 Case.

### v.  *Evidence of A to Zee Membership Interests After 2011*

The record here includes no evidence of A to Zee's business records prior to 2016, such as operating agreements, lists of membership interests, transfers of membership interests, minutes of member meetings, tax returns or other documentary evidence.  Mr.

Russom testified there was no written operating agreement in place as of 2013.[85] According to his testimony, the only documents referencing the ownership of the membership interests of A to Zee are an operating agreement dated February 25, 2016 (the "Operating Agreement")[86], and an "Interim Notice of Change of Manager/Member"[87] form Mr. Russom filed with the Secretary of the State on October 19, 2020.

### vi.  *The A to Zee 2016 Operating Agreement*

The earliest document in this record concerning the management or ownership of A to Zee is the Operating Agreement dated February 25, 2016, listing Yodit Woldeyohannes, Sofia Woldeyohannes, and Isaias Yohannes as members and the Debtor as a prior member who had no further interest in A to Zee.[88]  This document was admitted with limited weight since Mr. Russom is neither a member nor a manager, according to the Operating Agreement.  As noted, the Woldeyohannes siblings did not participate in the evidentiary hearings although they have appearing counsel.

There are several other issues with the Operating Agreement.  For example, when asked about the Operating Agreement, Mr. Russom testified he was familiar with the document and witnessed its execution by all signatories.[89]  This testimony was undercut by Mr. Russom's inability to recall where the parties signed it, although he believed it was signed in Attorney Boatman's office, and lacked familiarity with its terms.[90]

---

[85]     ECF Nos. 282, p. 124, Ln. 24 to p. 125, Ln. 9.  While AWET did offer what it described as an unofficial memorialization of the operating agreement entered into after the Debtor left A to Zee, the exhibit not admitted because it was not timely disclosed and not listed in AWET's list of exhibits.
[86]     ECF No. 224-8.
[87]     ECF No. 230-14.
[88]     ECF No. 224-8, p. 11.
[89]     ECF No. 300, p. 138, Ln. 3 to p. 139, Ln. 6.
[90]     ECF No. 300, p. 139, Ln. 13-17.

Mr. Russom appeared unfamiliar with important terms of the Operating Agreement and was surprised he had not signed it, stating he may have signed as a manager.[91]  In fact, and despite Mr. Russom's testimony otherwise, the Operating Agreement itself states A to Zee would not have and did not have a manager.[92]  Upon learning he was not listed as manager, he stated, "I never noticed this one, actually.  So, there is none that says I'm the manager in these papers?"[93]

The Operating Agreement itself creates more questions than answers.  For example, it states the Debtor transferred her interest in A to Zee to the other purported members in 2006, notwithstanding the 2009 state court decision that the Debtor owned 100% of A to Zee then, and notwithstanding her own bankruptcy schedules in the 2011 Case that stated she owned a 25% interest.[94]

The Operating Agreement requires a vote or other consent of the members to borrow money, incur any liability, or to bind A to Zee to any obligation.[95]  Even assuming the Debtor had dissociated by 2016 and the Woldeyohannes siblings in fact owned 100% of the equity of A to Zee by 2016, and assuming they agreed to authorize A to Zee to borrow money and encumber the Condos with a mortgage to secure the obligation, no evidence addressing the chain of title for at least 25% of the membership interest that belonged to the 2011 Case estate and was then abandoned to the Debtor upon the closing of the 2011 Case pursuant to Bankruptcy Code § 544 was introduced.  The Debtor's statement in her bankruptcy schedules is unexplained and fails to identify which

---

[91]    ECF No. 300, p. 137, Ln. 18-23.
[92]    ECF No. 224-8, p. 6.
[93]    ECF No. 300, p. 147, Ln. 11-12.
[94]    ECF No. 224-8, p. 2.
[95]    ECF No. 224-8, p. 7.

family members owned A to Zee, if they "took over" in 2006. Although the Operating Agreement states the Woldeyohannes siblings were members as of 2016, no evidence has been offered showing when or how they became members.

### vii.   *The A to Zee 2016 Mortgage to the Boatman Firm*

AWET introduced a note from A to Zee to the Boatman Firm[96] and certified copies of the Mortgage Deed,[97] and Assignment of Mortgage to AWET.[98] Mr. Russom testified to their authenticity.[99] Sofia Woldeyohannes purportedly signed the Mortgage, while the note was signed by Hannah Woldeyohannes as a "former member" as well as Sofia Woldeyohannes, Yodit Woldeyohannes, and Isaias Yohannes as members.[100] A to Zee granted the disputed mortgage to the Boatman Firm one day after the Operating Agreement was signed and it was recorded a few months later.[101] No borrowing resolution, meeting minutes, or other documents supporting A to Zee's membership interests and authority to grant the Mortgage is in the record.

### viii.   *The A to Zee 2020 Change of Member Form and Mortgage Assignment to AWET*

Four years later, in the midst of the 2018 Case, A to Zee filed a Change of Manager/Member form dated October 19, 2020, listing Yodit Woldeyohannes, Sofia Woldeyohannes, and Isaias Yohannes as members and Mr. Russom as manager with

---

96      ECF No. 224-26
97      ECF No. 224-25
98      ECF No. 224-27
99      ECF No. 282, p. 41 Ln. 10-21, p.42, Ln. 6-23, p. 44, Ln. 12-25, p. 45, Ln. 1-2; p. 46, Ln. 15-25. According to Fed.R.Evid. 901 (b)(1), evidence may be authenticated by testimony of a witness with knowledge an item is what it is claimed to be. The court discounts some of Mr. Russom's testimony due to factors discussed below.
100     ECF Nos. 224-25, 224-26.
101     ECF No. 224-26.

the Secretary of the State.[102]    The form bears an execution date of July 17, 2020, and represents the Debtor had ceased to be a member of A to Zee.[103]

One year later, after the 2018 Case was closed, Patrick Boatman, as duly authorized member of the Boatman Firm, indorsed the note to AWET.[104]  The assignment was recorded at about the same time as the note maturity date, in December 2021.

### f.  _The Creditor's Additional Motions and Request_

During the pendency of the hearing, the Creditor filed several additional documents, including a motion (ECF Nos. 288, 294) considered here as a further objection to AWET's Motion to Reopen this case, and a request for judicial notice.[105]  The Creditor also filed additional requests for judicial notice regarding certain evidence, and asked for the court to reach stated legal conclusions, and grant her relief.[106]  Her requests reference the Creditor's motion to reopen which is now withdrawn, and seeks judicial notice of evidence presented during the evidentiary hearing and several other hearings and lawsuits to which the Debtor was a party.[107]  To the extent the Creditor asks the court to take judicial notice of docket entries and other publicly available information in formulating this decision, the court has and will do so as stated here.  To the extent the Creditor seeks an order adopting her legal contentions, carefully interspersed with her citations to the record, the court declines.

Well after the conclusion of the evidentiary hearing, the Creditor filed her opposition to AWET's motion to reopen which is moot in light of the court's ruling here.[108]

---

[102]    ECF No. 230-14, pp. 6-7.
[103]    ECF No. 230-14, pp. 6-7.
[104]    ECF Nos. 224-27.
[105]    ECF Nos. 288, 294, 295, 304, 305.
[106]    ECF Nos. 295, 304.
[107]    ECF No. 295, 304.
[108]    ECF Nos. 305.

### g. Non-bankruptcy Litigation

It appears the parties continue to engage in non-bankruptcy litigation surrounding the Condos, which is affected by the existence of the Sale Order.  ECF No. 217, p.3; *see, Peterson v. Law Offices of Patrick W. Boatman, LLC et al.*, Connecticut Superior Court, Case No. HHD-CV23-5078361-S.

### III. <u>*JURISDICTION*</u>

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b), and the United States District Court for the District of Connecticut's General Order of Reference dated September 21, 1984.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).  This memorandum constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, applicable here pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### IV. <u>*APPLICABLE LAW*</u>

#### a. <u>*"Cause" to Reopen a Bankruptcy Case*</u>

Once standing to reopen a bankruptcy case is established, the moving party bears the burden of establishing cause to reopen.  *In re Dicks*, 579 B.R. 704, 708 (Bankr. E.D.N.Y. 2017).  Bankruptcy Code § 350(b) provides, "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."  Bankruptcy Code § 350(b), "is phrased in the permissive and thereby commits the decision as to whether to reopen a bankruptcy case to the sound discretion of the bankruptcy judge."  *In re Mardy,* No. 10-73819-AST, 2011 WL 917545, at *1, n.2. (Bankr. E.D.N.Y. Mar. 15, 2011); *see also*, *In re Solutia, Inc.*, 653 B.R. 99, 113 (Bankr. S.D.N.Y. 2023).  "Bankruptcy Code Section 105(a) permits this Court to raise, sua sponte,

the question of whether to [take] any action or [make] any determination necessary or appropriate to enforce or implement court orders or rules . . .." *In re Farley*, 451 B.R. 235, 236 n.2 (Bankr. E.D.N.Y. 2011) (cleaned up); *see, In re Bruzzese,* 214 B.R. 444, 449-50 (Bankr. E.D.N.Y. 1997) (collecting cases).

Because AWET seeks to reopen the 2018 Case for purposes other than administering assets or according relief to the Debtor, it must establish some other cause to reopen the case. "While the Code does not define 'other cause' for purposes of reopening a case under section 350(b), the decision to reopen is discretionary with the court, which may consider numerous factors, including equitable concerns." *In re Woldeyohannes*, 2023 WL 8717014, at *7 (citing 3 COLLIER ON BANKRUPTCY ¶ 350.03); accord *In re Clark,* No. 8-10-73746-REG, 2010 WL 5348721, at *2 (Bankr. E.D.N.Y. Dec. 21, 2010) (citing *In re Chalasani,* 92 F.3d 1300, 1307 (2d Cir. 1996)).

Factors courts should consider when deciding to reopen a bankruptcy case include: (1) the length of time that the case was closed; (2) whether a non-bankruptcy forum has jurisdiction to determine the issue which is the basis for reopening the case; (3) whether in prior litigation the bankruptcy court determined that a state court would be the appropriate forum; (4) whether any parties would suffer prejudice should the court grant or deny the motion to reopen; (5) the extent of the benefit to the debtor by reopening; and (6) whether it is clear at the outset that no relief would be forthcoming by granting the motion to reopen. *In re Solutia, Inc.*, 653 B.R. 99, 113, 114 (citing the "Easley Factors", *see In re Easley-Brooks*, 487 B.R. 400, 407 (Bankr. S.D.N.Y 2013) (citing *In re Otto*, 311 B.R. 43, 47 (Bankr. E.D. Pa. 2004)); *In re Ramsoomair,* No. 21-11215, 2022 WL 828307, at *4 (Bankr. S.D.N.Y. Mar. 18, 2022) (considering six factors, including "the length of

time that the case was closed," "whether a nonbankruptcy forum has jurisdiction to determine the issue which is the basis for reopening the case," and "whether any parties would suffer prejudice should the court grant or deny the motion to reopen"); *In re Arana,* 456 B.R. 161, 175–77 (Bankr. E.D.N.Y. 2011) (considering benefits to the debtor, benefits to the creditors, and good faith); *In re Stein,* 394 B.R. 13, 18 (Bankr. E.D.N.Y. 2008) (considering potential benefits to creditors and trustee's ability to administer an unadministered asset).   When weighing these factors, a court ought to emphasize substance over technical considerations.

### b.  <u>Standing as a Party in Interest</u>

Only a debtor or a "party in interest" has standing to file a motion to reopen a closed bankruptcy case pursuant to Bankruptcy Code § 350(b).  Fed.R.Bankr.P. 5010.  Here, it is AWET's burden to establish it has standing in this case since it is not a creditor of the Debtor and its only relationship to the 2018 Case lies with the Sale Order.    *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995); accord *Cole v. Rescia*, No. 3:21-CV-01130-MPS, 2022 WL 4536830, at *5 (D. Conn. Sept. 28, 2022).

Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure define "party in interest"; 11 U.S.C. § 350 and Fed.R.Bankr.P. 5010 include no definition. The court has discretion to review the facts and circumstances of a case and determine whether the movant is a qualified party in interest to reopen a case.  *In re Riley,* 13-61356, 2017 WL 4334033, at *4 (Bankr. N.D.N.Y. Sept. 28, 2017)*, aff'd sub nom. Saticoy Bay LLC Series 2110 Club Meadows v. JP Morgan Chase Bank, N.A.,* No. 3:18-CV-579, 2018 WL 11203041 (N.D.N.Y. Nov. 21, 2018).

The Second Circuit, while acknowledging the term "party in interest" is not defined by the Bankruptcy Code, noted a "'real party in interest' is the one who . . . has the legal

right which is sought to be enforced or is the party entitled to bring suit . . .." *See, Krys v. Official Comm. of Unsecured Creditors (In re Refco Inc.),* 505 F.3d 109, 117 (2d Cir. 2007). The Court in *Refco* held party in interest standing varies depending on the underlying provision of the Bankruptcy Code. *In re Refco Inc.,* 505 F.3d 109, 117 (2d Cir. 2007) ("we see no need to limit standing in the § 1109(b) context solely to the class of creditors and debtors permitted . . . in the quite different context of § 362(d)(1)"). *In re Refco Inc.*, 505 F.3d at 117. Other courts within the Circuit have noted the phrase has "generally been interpreted in a Chapter 7 case to refer to creditors of the debtor who have claims against the estate and whose pecuniary interests are directly affected by the bankruptcy proceedings.'" *In re Manshul Const. Corp.*, 223 B.R. 428 (Bankr. S.D.N.Y. 1998) (citing *In re Slack*, 164 B.R. 19, 22 (Bankr.N.D.N.Y.1994)).

The District Court here focused on the concept of pecuniary interest when considering standing. Other Circuit Courts wrestling with the concept have at times applied a relatively narrow reading of "party in interest" as it relates to reopening a case pursuant to Fed.R.Bankr.P. 5010. *See Alexandria Consulting Group, LLC v. Alexandria Surveys Int'l LLC,* 589 F. App'x 126 (4th Cir. 2014) (unpublished) (affirming decision that party in interest standing applies only to the debtor, the trustee or a creditor of the debtor, or a participant in the original case); *accord Goldenberg v. Deutsche Bank Nat'l Trust Co. (In re Papazov)*, 610 F. App'x 700 (9th Cir. 2015) (unpublished) (utilizing the enumerated list of "parties in interest" in Bankruptcy Code § 1109(b) as a guide in determining the scope of potential movants under Rule 5010 in a chapter 7 bankruptcy); *accord Nintendo Co. v. Patten (In re Alpex Computer Corp.)*, 71 F.3d 353, 356 (10th Cir. 1995) (holding case law implicitly confines the concept "party in interest" to "debtors, creditors, or

trustees, each with a particular and direct stake in reopening cognizable under the Bankruptcy Code").  Collier on Bankruptcy notes, "[p]arty in interest, although not specifically defined, is broadly construed, and includes the United States trustee, the trustee, and creditors.  Parties not creditors of the debtor are not usually parties in interest."  9 COLLIER ON BANKRUPTCY ¶ 5010.02 (footnotes omitted).  But, in the Supreme Court's recent decision in *Kaiser Gypsum* considered the concept of "party in interest" standing, the Court noted, "Congress uses the phrase 'party in interest' in bankruptcy provisions when it intends the provision to apply broadly."  *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.,* ___ U.S. ___, 144  S. Ct. 1414 (2024).

The pecuniary interest inquiry is similar to the concept of aggrievement when determining appellate standing.  The Third Circuit finds appellate standing in bankruptcy cases is limited to persons aggrieved.   Within this context, litigants are "persons aggrieved" if the order diminishes their property, increases their burdens, or impairs their rights. *In re Dykes*, 10 F.3d 184, 187 (3d Cir. 1993).  The Ninth Circuit formulates the inquiry by holding only those "whose rights or interests are directly and adversely affected pecuniarily" by the Bankruptcy Court's order may bring an appeal." *Raza v. Biase (In re Rose Color, Inc.)*, 198 F. App'x 197, 202 (3d Cir. 2006); *accord Jones v. Frazer (In re Mark Techs. Corp.)*, 2024 WL 1253793 (9th Cir. Mar. 25, 2024).

The District Court here held "the term 'party in interest' should be read to include all persons with a direct pecuniary interest in the bankruptcy proceedings."  *In re Woldeyohannes*, 2023 WL 8717014, at *6.  AWET argues it has alleged such a pecuniary interest exists because it holds a valid mortgage that may have been improperly

extinguished by the Sale Order.[109]   The District Court directed that the bankruptcy court consider whether the Mortgage was valid and whether AWET (or its predecessor in interest, the Boatman Firm) was notified of the proposed sale.  *In re Woldeyohannes*, 2023 WL 8717014, at *6.

### c.  *Motions Pursuant to Fed.R.Civ.P.60 and Fed.R.Bankr.P. 9024*

AWET seeks to reopen the 2018 Case in order to proceed on a motion for relief from judgment pursuant to Fed.R.Civ.P. 60, applicable here Fed.R.Bankr.P. 9024.[110] AWET seeks relief from the Sale Order, alleging the purported sale of A to Zee's interest in the Condos was a scrivener's error that should be corrected.   AWET argues the scrivener's error constitutes good cause for relief pursuant to Fed.R.Civ.P. 60.

Rule 60 provides in relevant part,

(a) The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave. . . .

(b) . . . On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . .  (6) any other reason that justifies relief.
Fed.R.Civ.P. 60.

"A scrivener's error is . . . a[n] error resulting from a minor mistake or inadvertence especially in writing or copying something."  *MSP Recovery Claims, Series LLC v. AIG Property Casualty Co.*, 2021 WL 3371621, at *8 (S.D.N.Y. Aug. 2, 2021); accord*, Sinha v. Bradley Univ.*, 995 F.3d 568, 575-76 (7th Cir. 2021).  "A motion to correct a clerical

---

[109]     ECF No. 225, p. 12.
[110]     ECF Nos. 152, 158.

error under Rule 60(a) must seek to conform the written judgment to the judgment actually rendered by the court; it cannot seek to alter the substantive rights of the parties." *Dudley ex rel. Est. of Patton v. Penn-Am. Ins. Co.,* 313 F.3d 662, 671 (2d Cir. 2002)(Sotomayor, C.J., concurring).

"However, motions pursuant to Rule 60(a) do not seek to reopen the underlying case." *In re Lundquist*, 371 B.R. 183, 187 n.7 (Bankr. N.D. Tex. 2007). The Notes of the Advisory Committee to Rule 5010 of the Federal Rules of Bankruptcy Procedure suggest a court may act without reopening the case where the court is correcting clerical errors in judgments, orders, or other parts of the record therein caused by oversight or omission pursuant to Rule 9024. Fed.R.Bankr.P. 5010, Notes of Advisory Committee; *see McGuffin v. Barman (In re BHB Enters., LLC)*, Nos. 97-01975-W, 97-80227-W, 2006 Bankr. LEXIS 3254, at *8 (Bankr. D.S.C. Nov. 7, 2006) (correcting clerical error without reopening case), *aff'd, Baumhaft v. McGuffin*, No. CIVA 4:06CV3617 RBH, 2007 WL 2783404, at *5 (D.S.C. Sept. 21, 2007), *aff'd,* 283 F. App'x 120 (4th Cir. 2008) (unpublished). A court may correct a clerical error *sua sponte* whenever one is found, with or without notice. Fed.R.Civ.P. 60(a).

"A party moving for relief under Rule 60(b) generally must present[] highly convincing . . . evidence in support of vacatur and show good cause for the failure to act sooner and that no undue hardship be imposed on other parties." *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 53 (2d Cir. 2021) (cleaned up). Rule 60 is "properly invoked where there are extraordinary circumstances or where the judgment may work an extreme and undue hardship." *In re Ballone*, No. 10-20294-PRW, 2015 WL 515241, at *3 (Bankr. W.D.N.Y. Feb. 5, 2015). Relief under Rule 60(b) is generally not favored and

is properly granted only upon a showing of exceptional circumstances. *Freeman v. Wright (In re Wright)*, Nos. 07-50506, 07-5039, 2011 WL 6202883, at *2 (Bankr. D. Conn. Dec. 8, 2011) (quoting *Insurance Co. of North America v. Public Service Mut. Ins. Co.,* 609 F.3d 122, 131 (2d Cir. 2010)).    A party must file a motion to reopen within a "reasonable" time, but motions to reopen pursuant to Rule 60(b) do not have a bright-line time constraint.    *Kemp v. United States*, 596 U.S. 528, 531-32 (2022).    "While normally Rule 60(b) relief is sought by motion of a party, nothing forbids the court to grant such relief *sua sponte.*"  *Fort Knox Music, Inc. v. Baptiste*, 257 F.3d 108, 111 (2d Cir. 2001) (cleaned up).

### d.  Remnant Asset Sales

The Sale Order giving rise to the pending dispute resulted from a Chapter 7 Trustee's intention to sell remnant assets she considered to be of little or no value to the estate, for which she had a willing buyer.  Sale transactions pursuant to Bankruptcy Code § 363 must be based on the sound business judgment of the debtor or trustee.  *In re MF Glob. Inc.*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012) (citing *In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992)); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)).  Once the Trustee articulates a reasonable basis for its business decision, a "strong presumption" follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate.  *In re MF Glob. Inc.*, 467 B.R. at 730; *accord In re Allard*, No. 18-14092 (MG), 2019 WL 4593854, at *4 (Bankr. S.D.N.Y. Sept. 20, 2019); *see also, In re Bohannan*, No. 07-32050 LMW, 2009 WL 596840, at *5 (Bankr. D. Conn. Jan. 6, 2009)(unpublished).

The burden of rebutting such presumption falls on the party opposing the transaction.  *In re MF Glob. Inc.*, 467 B.R. at 730.  Once a reasonable basis for the

business decision has been shown, the court must determine whether (i) the Trustee has provided all interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith. *In re MF Glob. Inc.*, 467 B.R. at 730. The court's role in sale motions is not to second-guess the trustee's judgment, but only to approve the sale where doing so would benefit the estate.

The court should not approve a sale where there is a dispute over whether the estate owns the property to be sold. 3 COLLIER ON BANKRUPTCY ¶ 363.02 (citing *Darby v. Zimmerman (In re Popp)*, 323 B.R. 260 (B.A.P. 9th Cir. 2005)). However, selling remnant assets of the estate, assets that may or may not be in existence at the time of the sale, is generally allowed. *In re Glob. Reach Inv. Corp.*, BAP No. NC-11-1187-SADH, 2012 WL 933594, at *4 (B.A.P. 9th Cir. Mar. 20, 2012)(unpublished), *aff'd*, 570 F. App'x 723 (9th Cir. 2014) ("The bankruptcy court's order simply authorized the Trustee to sell whatever interest the estate had - even if that interest was nothing - to a buyer with full knowledge of the situation."); *see also In re Stokes,* No. ADV 12-00052-RBK, 2013 WL 5313412, at *9 (B.A.P. 9th Cir. Sept. 23, 2013); *Gorka v. Joseph (In re Atl. Gulf Cmtys. Corp.)*, 326 B.R. 294, 300 (Bankr. D. Del. 2005) ("Once the estate's interest in the Disputed Property, if any, is sold [via quitclaim deed] by the Trustee, the Plaintiffs are free to adjudicate the merits of their claim in a local forum.").

As with a Bankruptcy Code § 363(b) sale, a Trustee cannot sell property of the estate free and clear of any interest in such property pursuant to Bankruptcy Code § 363(f) unless such property is property of the estate not subject to a bona fide dispute. Bankruptcy Code § 363(f); *In re Interiors of Yesterday, LLC,* No. 02-30563LMW, 2007 WL 419646, at *5 (Bankr. D. Conn. Feb. 2, 2007)(unpublished; citing *In re Claywell,* 341

B.R. 396. 398 (Bankr. D. Conn. 2006)).  "Any interest" is a broad phrase that must be determined on a case-by-case basis.  *Elliott v. GM LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 155 (2d Cir. 2016).

The Trustee carries the burden of showing that cause exists to sell the property free and clear of interests.  Pursuant to Bankruptcy Code § 363(f),

> The trustee may sell property . . . free and clear of any interest in such property of an entity other than the estate, only if—
>> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>> (2) such entity consents;
>> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>> (4) such interest is in bona fide dispute; or
>> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.
> 11 U.S.C. § 363(f).

### e.  *The Nature and Extent of the Bankruptcy Estate*

The Creditor raises three arguments concerning ownership of the Debtor's interest in A to Zee and, by association, to assail AWET's standing.  First, the Creditor argues the Sale Order entered correctly and, due to a prior piercing of the corporate veil, the assets of A to Zee were not distinct from the assets of the Debtor.[111]  The Creditor next argues the Debtor was the sole owner of A to Zee and Sofia Woldeyohannes, the signatory of the Mortgage on behalf of A to Zee, had no power to grant the Mortgage, rendering the Mortgage invalid and leaving AWET without a pecuniary interest.[112]  Finally, the Creditor argues the Debtor's interest in A to Zee was never abandoned at the close of the Debtor's 2011 Case and is still property of the 2011 case's bankruptcy estate.[113]

---

[111]    ECF No. 227, pp. 2-3.
[112]    ECF No. 227, p. 1-2.
[113]    ECF No. 227, p.3.

37

### i. *Piercing the Corporate Veil*

The Creditor first argues, due to the finding of alter ego by the Connecticut Superior Court, the corporate veil was pierced and the assets of A to Zee vested in the bankruptcy estate as assets of the Debtor.[114]   The Creditor relies on a Connecticut Superior Court judgment finding A to Zee was the "alter ego" of the Debtor.  *Peterson v. Woldeyohannes*, No. CV040834966S, 2009 WL 4686026, at *1 (Conn. Super. Ct. Nov. 13, 2009).  Such a finding, the Creditor argues, allows a creditor to satisfy a judgment from the assets of a limited liability corporation as well as the shareholder personally.  This process is referred to as "reverse veil piercing."

"[A] limited liability company, under Connecticut law, is 'an entity distinct from its member or members' . . .."  *In re Woldeyohannes*, 2023 WL 8717014, at *7 (quoting Conn.Gen.Stat. § 34-243g(a)).   "[P]roperty transferred to or otherwise acquired by a limited liability company is property of the limited liability company and not of the members individually and . . . [a] member has no interest in specific limited liability company property."  *Bongiorno v. Capone*, 185 Conn. App. 176, 199 (2018) (cleaned up).[115] Normally, a creditor of a shareholder can only reach a shareholder's interest in the limited liability company, not property of the limited liability company.  Piercing the corporate veil is an exception to this limitation.

"The concept of piercing the corporate veil is equitable in nature. . .. The [alter ego] standard requires that the corporation, functionally speaking, have no separate existence

---

[114]     ECF No. 227, p. 2-3.

[115]     While the court in *Bongiorno* was discussing a now-repealed statute, Conn.Gen.Stat § 34-167 (a), Rev. 2011, the current statutory scheme also provides a limited liability company is a distinct legal entity that may own property.  *See,* Conn.Gen.Stat. § 34-243g(a) ("A limited liability company is an entity distinct from its member or members"); Conn.Gen.Stat. § 34-275d ("Activities of a foreign limited liability company which do not constitute transacting business in this state . . . include: (10) Owning, without more, property").

from the alter ego who controls and dominates the corporation's affairs." *Patel v. Flexo Converters U.S.A., Inc.*, 309 Conn. 52, 58-59 (2013) (cleaned up). The type of reverse piercing the Creditor asks the court to engage in "extends the traditional [veil piercing] doctrine to permit a third-party creditor to pierce the corporate veil to satisfy the debts of an individual shareholder out of the corporation's assets." *McKay v. Longman*, 332 Conn. 394, 429-30 (2019).

To reverse pierce the corporate veil, however, two further elements must be shown: first, the court must consider the impact of reverse piercing on innocent investors and creditors; second, the court must consider whether adequate remedies at law are available. *McKay*, 332 Conn. at 440.

### ii. <u>*Dissociation From a Limited Liability Company*</u>

The Creditor next argues the Debtor was the sole owner of A to Zee as of the Petition Date, and the Mortgage is invalid as the signer had no ability to encumber the assets of A to Zee in 2016. The Creditor cites to several state and bankruptcy court cases, discussed below, for the contention the Debtor remained the sole owner of A to Zee in 2016 until, at the earliest, October 19, 2020, when a change of manager/member form was filed with the Connecticut Secretary of the State.[116] AWET argues the Debtor voluntarily dissociated from A to Zee in 2006 and, in the alternative, by operation of law upon filing for bankruptcy in 2011.[117] AWET argues the Debtor had no interest in A to Zee and, by extension, the Condos because of this dissociation.[118]

---

[116]    ECF No. 230-14; ECF No. 282, pp. 129, Ln. 11 to 131, Ln. 11.
[117]    ECF No. 226, pp. 3-4, 9.
[118]    ECF No. 226, pp. 11.

During the Debtor's first bankruptcy, the Connecticut Limited Liability Company Act, Conn.Gen.Stat. §§ 34-100 to 34-242 inclusive, was in effect.[119]  Conn.Gen.Stat. § 34-101, Rev. 2011 provided, "(8) 'Event of dissociation' means an event that causes a person to cease to be a member as provided in section 34-180 of this act." Conn.Gen.Stat. §34-180 Rev. 2011 provided,

> (a) Subject to subsection (b) of section 34-173, a person ceases to be a member of a limited liability company upon the occurrence of one or more of the following events: (1) The member withdraws by voluntary act from the limited liability company as provided in subsection (c) of this section . . . (3) . . . (B) unless otherwise provided in writing in the operating agreement, when the member assigns all of his interest in the limited liability company with the written consent or by an affirmative vote of a majority in interest of the members who have not assigned their interests; (4) unless otherwise provided in writing in the operating agreement or by written consent of all members at the time, the member . . . (B) files a voluntary petition in bankruptcy . . .. (c) Unless the operating agreement provides in writing that a member has no power to withdraw by voluntary act from a limited liability company, the member may do so at any time by giving thirty days' written notice to the other members, or such other notice as provided for in writing in the operating agreement.

Conn.Gen.Stat. §34-159 Rev. 2011 provided,

> (a) Upon the occurrence of an event of dissociation under section 34-180, other than an event of dissociation as provided in subparagraph (B) of subdivision (3) of subsection (a) of said section, a dissociating member is entitled to receive any distribution which the member was entitled to receive prior to the event of dissociation.  Unless otherwise provided in writing in the articles of organization or operating agreement, or as otherwise provided in subsection (b) of section 34-173, the dissociating member shall not be entitled to payment for the member's interest in the limited liability company and, beginning on the date of dissociation, *the dissociating member shall have only the rights of an assignee of the dissociating member's interest in the limited liability company and the dissociating member shall no longer be a member of the limited liability company.* (Emphasis added)

---

[119]    *See,* Connecticut Public Act No. 93-267.

Under the 2011 statutory scheme, an assignee was only entitled to receive the distributions to which the assignor would have been entitled.  Conn.Gen.Stat. §34-170 Rev. 2011.

Both Conn.Gen.Stat. §34-159 Rev. 2011 and Conn.Gen.Stat. §34-180 Rev. 2011 defer to an LLC's operating agreement and set default rules where the operating agreement is silent.  Pursuant to Conn.Gen.Stat. § 34-101(17), Rev. 2011, "'[o]perating agreement' means any agreement, written or oral, as to the conduct of the business and affairs of a limited liability company, which is binding upon all of the members."

Whether a dissociation under Conn.Gen.Stat. §34-180 Rev. 2011 and Conn.Gen.Stat. §34-159 Rev. 2011 reduces a dissociating member's interest in an LLC to a solely pecuniary interest is an open question of law.  Most courts faced with this question have held Bankruptcy Code § 541 preempts state dissociation statutes and, upon entering bankruptcy, all of a debtor's economic and non-economic rights and interests, including the right to participate in management of the LLC, vest in the bankruptcy estate.  *See, Garcia v. Garcia (In re Garcia)*, 494 B.R. 799, 810 (Bankr. E.D.N.Y. 2013).

Bankruptcy Code § 541, "plainly prevents termination of a debtor's rights as a result of bankruptcy in any event. . .. [T]he result of dissociation/dissolution is unavoidably in conflict with the clear text of Section 541, which prevents not only 'termination' but even the milder 'modification' of a debtor's interests."  *Weiss v. All Year Holdings Ltd. (In re All Year Holdings Ltd.)*, 645 B.R. 10, 35 (Bankr. S.D.N.Y. 2022), *aff'd* 648 B.R. 434, 457 (S.D.N.Y. 2022).  In that case, the Court was not tasked with determining the effect of a statute that caused dissociation, but rather was opining on the possible validity of a

hypothetical statute that did effectuate such a transfer or assignment.  *In re All Year Holdings Ltd.*, 645 B.R. at 33.

In *In re Modanlo*, 412 B.R. 715, 721 (Bankr. D. Md. 2006), on the other hand, the bankruptcy court was tasked with interpreting a statute with language squarely on point with the Connecticut Statute and whether a bankruptcy trustee file a new bankruptcy case for a debtor's limited liability company.[120]   The issue in that case was whether filing bankruptcy divested the debtor, the sole member of an LLC, of his right to manage an LLC.  *In re Modanlo*, 412 B.R. at 717-18.  The Court held,

> the decisional law interpreting LLC acts that divest bankruptcy trustees of a LLC member's management rights are founded on notions that (remaining) members (like partners in a partnership) should not be forced to accept substituted performance by a member's trustee. . ..  [T]his concern . . . [is] applicable only in the context of multi-member LLCs, not single member LLCs.  Accordingly, the Court finds that the Trustee had the power to place [the Debtor's LLC] into bankruptcy upon his appointment, and, . . . possesses both the economic and governance rights to participate in the management of [the LLC] . . ..
> *In re Modanlo*, 412 B.R. at 731.

The Court in *Modanlo* relied primarily on a Colorado bankruptcy court decision, *In re Albright*, 291 B.R. 538 (Bankr. D. Colo. 2003).  In that case the Court held, "[t]he Colorado limited liability company statute provides that the members, including the sole member of a single member limited liability company, have the power to elect and change managers.  Because the Trustee became the sole member of [the LLC] upon the Debtor's bankruptcy filing, the Trustee now controls, directly or indirectly, all governance of that

---

[120]     The statute at issue in that case provided, " A person ceases to be a member of a limited liability company upon the happening of any of the following events:
(1) Unless otherwise provided in a limited liability company agreement, or with the written consent of all members, a member: . . .
b. Files a voluntary petition in bankruptcy . . .."
*In re Modanlo*, 412 B.R. at 720 (Bankr. D. Md. 2006) (quoting the Delaware Limited Liability Company Act § 18-304).

entity, including decisions regarding liquidation of the entity's assets." *In re Albright,* 291 B.R. at 541.

## V.   *DISCUSSION*

After remand the bankruptcy court reconsidered AWET's motion to reopen the Chapter 7 case for the purpose of modifying or correcting the Sale Order and held an evidentiary hearing to determine whether AWET – an LLC created after the 2018 Case without a claim against the 2018 Case's bankruptcy estate – has standing as a party in interest to seek to reopen the case.   Based on the evidentiary record here, I conclude AWET failed to meet its burden to establish standing based on a valid and enforceable mortgage on the Condos.   However, the Sale Order is inaccurate, does not reflect what the Chapter 7 Trustee intended to sell or what the bankruptcy court intended to approve, and is misleading respecting the status of bankruptcy estate's possible ownership interest in the Condos.   For these reasons, the 2018 Case will be reopened, and the Sale Order will be amended.

### *AWET Failed to Establish It Holds the Mortgage*

The District Court questioned whether AWET could establish standing as a party-in-interest premised on a valid Mortgage that was affected by the Sale Order.   *In re Woldeyohannes*, 2023 WL 8717014, at *6.   To have a valid and enforceable Mortgage, AWET needed to show that A to Zee was authorized to grant the Mortgage to the Boatman Firm in February 2016.   For A to Zee to be authorized to borrow money and to grant the Mortgage, the owners of the membership interest(s) in A to Zee needed to consent.   AWET argues that if the Debtor Hannah Woldeyohannes owned A to Zee prior to February 2016, she no longer did on the day the Mortgage was signed.   AWET primarily

relies on three documents to establish A to Zee's authority to grant a Mortgage on the Condos:  the Operating Agreement, the note and the Mortgage.

### *The Operating Agreement*

To buttress its claim that A to Zee acted with authority when it executed the note and Mortgage in 2016, AWET relied heavily on a copy of the 2016 Operating Agreement filed as part of Sofia Woldeyohannes's objection to the Sale Motion in 2021.  While the document is in evidence as part of the objection, the court accords it little weight.  No signatory to the Operating Agreement participated in the evidentiary hearing on the motion to reopen, although Sofia and the other Woldeyohannes siblings have appearing counsel in this case.  While Mr. Russom testified he witnessed the execution of the Operating Agreement, his name does not appear and he was unclear where the execution of the agreement occurred.  The signatures on the Operating Agreement are not notarized.  No affidavit by any party who signed the Operating Agreement is in evidence and no signatory testified.

Mr. Russom's testimony was at times self-serving and internally inconsistent.  He is the sole member of AWET and the alleged manager of A to Zee.  He appeared unfamiliar with the terms of the A to Zee Operating Agreement.  For example, Mr. Russom testified he is A to Zee's manager when the Operating Agreement he relies on specifies there will not be a manager unless one is named.  The only record of a manager being named from 2016 to 2020 was a form filed with the Secretary of the State identifying Hannah Woldeyohannes as the Managing Director for A to Zee, until a change was made in October 2020.

Generally, the Operating Agreement could be clearer.  It requires a membership vote (of which there is no record) before the LLC may borrow money or grant a mortgage

but also provides consent of the members will suffice.  Nothing other than Mr. Russom's testimony and the otherwise unauthenticated Operating Agreement supports the claim that the Woldeyohannes siblings owned 100% of the A to Zee membership interest in 2016.  No evidence other than Mr. Russom's testimony supports the assertion in the Operating Agreement that each of the Woldeyhohannes siblings hold a capital contribution or capital account of $77,000 to A to Zee, and there was no credible evidence to suggest when Hannah Woldeyohannes's membership interest was acquired by any of the Woldeyohannes siblings, or for what consideration.

While the Debtor's bankruptcy schedules in this 2018 Case state the Debtor disassociated from A to Zee in favor of unspecified "family members" in 2006, the weight of the evidence belies this.  The 2011 Case bankruptcy schedules, for example, reflect a 25% interest in A to Zee and the Debtor agreed to have her bankruptcy discharge denied based on allegations she in fact owned a 100% interest in A to Zee.  While no court order determined the amount of her interest, the 2011 Case order was premised on Hannah Woldeyohannes's ownership interest – disclosed and undisclosed – in A to Zee.  The various state court decisions also belie this assertion that Hannah stepped away from A to Zee as a membership owner in 2006.

The record fails to support a conclusion that the Woldeyohannes siblings – rather than the Debtor or anyone else – owned all or a part of A to Zee as of February 2016.  Instead, the record reflects a state court's determination the Debtor owned 100% of A to Zee prior to 2011, consistent with the record before the bankruptcy court in the 2011 Case.  The closure of the 2011 Case left Hannah Woldeyohannes with at least a 25% interest in A to Zee, as explained below.

On this record, the court cannot credit much of Mr. Russom's testimony and does not find the Operating Agreement to be persuasive evidence of the Woldeyohannes siblings' membership interests in A to Zee, or their authority to act in the name of A to Zee, in 2016.

### *The Note and Mortgage*

During the evidentiary hearing, AWET introduced a copy of a promissory note from A to Zee to the Boatman Firm, and certified copies from the Hartford land records of a Mortgage Deed securing the note and an Assignment of Mortgage from the Boatman Firm to AWET.    The Mortgage was purportedly signed in February 2016, by Sofia Woldeyohannes and Patrick Boatman, while the note was signed by Hannah Woldeyohannes as a "former member" as well as the Woldeyohannes siblings as members.   Neither the Debtor nor any one of the Woldeyohannes siblings testified.

The original note is not in the record and the consideration paid to the Boatman Firm for the assignment of the Mortgage to AWET is unexplained.   Mr. Russom testified AWET is the holder of the note.   ECF No. 282, p. 43, ln. 19-20.   Under Connecticut law, the party entitled to enforce an instrument is its "holder," defined as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." Conn. Gen. Stat. § 42a-1-201(b)(21); *see, U.S. Bank, Nat. Ass'n v. Schaeffer*, 160 Conn. App. 138, 150 (Conn. App. 2015).

<u>*Ownership of A to Zee's Membership Interests*</u>

It is not clear whether anyone claiming an interest in A to Zee other than the Debtor was ever on notice of the differing claims to the ownership of A to Zee. [121]  In 2006, 2008, and 2009, the Debtor was determined to be the sole owner of A to Zee.  *See, Peterson v. Woldeyohannes*, , 2006 WL 2948850, at *1 ("The units were purchased by A to Z, LLC of which [Hannah Woldeyohannes] was sole owner."), *rev'd*, 111 Conn. App. 784, (2008); *Peterson v. Woldeyohannes*, 111 Conn. App. at 785 ("The defendant is the sole owner of A to Zee, LLC."); *Peterson v. Woldeyohannes*, No. CV040834966S, 2009 WL 4686026, at *1 ("allegations that the defendant Woldeyohannes is the alter ego of A to Zee [were] deemed admitted and the court [found] that the [Debtor] is the sole member of A to Zee."). In the 2011 Case, there was an unresolved question regarding the 25% scheduled interest and a possible, undetermined amount of an unscheduled interest in the 2011 case.  *See*, *Tracy Hope Davis, United States Trustee for Region v. Woldeyohannes*, Dkt. No. 2:12-ap-2021, AP-ECF No. 35 (granting judgment on Count One which alleged the Debtor "concealed the Debtor's 100% interest in [A to Zee]").  That question was never affirmatively answered by the bankruptcy court, which granted judgment on Counts One and Three (with the Debtor's agreement) without the Debtor specifically admitting any allegations. [122]

---

[121]    Sofia Woldeyohannes, Yodit Woldeyohannes and Isaias Yohannes were represented by the Boatman Firm -- the same law firm represented the Debtor in waiving her discharge in the 2011 Case -- in *Peterson v. Hume,* Connecticut Superior Court, Docket No. HHD-CV-11-5035394-S.  The notion the siblings were unaware of the Debtor's stipulation to waive her discharge and the dispute about the percentage ownership of A to Zee in her bankruptcy case strains credulity.

[122]    The Creditor, after filing her motion to reopen the present case, moved to reopen the 2011 Case. *See,* Case No. 11-20003, ECF Nos. 207, 208.  The Creditor later withdrew the motion, stating, "as the only remaining creditor with a valid proof of claim, [the Creditor] is responsible for pursuing collection of said judgment in state court versus asking the U.S. Trustee or a new Chapter 7 Trustee to get involved anew."  Case No. 11-20003, ECF No. 214.  The court notes that this statement, with no legal support cited, is incorrect.  Only a Chapter 7 Trustee may administer assets of a bankruptcy estate.  *See,* 11 U.S.C. § 704.

Although AWET argues such decisions were somehow faulty, the bankruptcy court must take them as they are.  The court further notes during the Debtor's adversary proceeding in the 2011 Case the Debtor was represented by the Boatman Firm and canvassed at a hearing, and she chose to consent to judgment entering on a count which included a claim she concealed a 100% interest in A to Zee.  *See, Tracy Hope Davis, United States Trustee for Region v. Woldeyohannes*, Dkt. No. 2:12-ap-2021, AP-ECF No. 54, p. 51, Ln. 7-12.  Mr. Russom's testimony, the state court decisions and the 2011 Case all indicate the Debtor did not dissociate from A to Zee, at least not completely, before the 2012 decision denying her bankruptcy discharge.

Before 2011, limited liability company operating agreements could be oral, and members could dissociate themselves at will.  Conn.Gen.Stat. § 34-180 Rev. 2011.  A member was able to dissociate from an LLC at any time provided they gave the other members written notice, or the operating agreement provided otherwise.  Conn.Gen.Stat. § 34-180.  No member of the LLC testified as to the terms of any operating agreement in place in 2006 when the Debtor purportedly dissociated from A to Zee, if there was one in place at all.  When or how the Debtor dissociated is not established on this record.[123]

On this record, the court cannot conclude the Mortgage was authorized by A to Zee because there is no persuasive evidence showing who held the membership interests in 2016.

---

[123]    If the Debtor dissociated in 2011 by operation of law due to her filing Bankruptcy; see, Conn.Gen.Stat. § 34-180 Rev. 2011; her scheduled membership interest was abandoned back to her once the case closed.  It is an open question whether the bankruptcy estate in the 2011 Case and possibly the 2018 Case came into possession of her rights as an assignee to distributions pursuant to her membership interests, or possession of the entirety of her membership interest, including management rights.  It is also unclear whether the interest abandoned back to the Debtor was only her rights as an assignee after dissociation, or her full interest as a member.  Due to AWET's failure to meet its initial burden, the court need not answer these questions.

*Prior Court Orders Do Not Pierce the Corporate Veil Between the Debtor and A to Zee*

Ms. Peterson's position that the Chapter 7 Trustee had authority to sell A to Zee's Condos free and clear of the Boatman Firm's mortgage (later assigned to AWET) relies on her argument that other courts entered orders determining Hannah Woldeyohannes and A to Zee are one and the same, having pierced the corporate veil between them. These arguments are unsupported by the record.

In the Creditor's original lawsuit against the Debtor commenced in 2004, the state court held the "allegations that the defendant Woldeyohannes is the alter ego of A to Zee [were] deemed admitted and the court [found] that the [Debtor] is the sole member of A to Zee."[124]  The result was a money judgment only, because the state court noted the corporate veil could not be pierced because A to Zee was not a party to the case.[125]  Later in the same case[126], the state court said it had no authority to effectively transfer the assets of A to Zee, who was not a party to the action, to the Creditor.

When the bankruptcy court vacated the Debtor's 2011 Case bankruptcy discharge order, the issue of whether A to Zee was an alter ego of the Debtor was not raised or considered.  Notably, none of the Woldeyohannes siblings were served with notice of the 2011 Case proceedings, although attorneys at the Boatman Firm – the eventual mortgagee here – represented the Debtor.

There is no evidence any court contemplated reverse veil piercing or deemed the assets of A to Zee to be liable for the creditors of the Debtor.  To reverse pierce the corporate veil to enable the Chapter 7 Trustee to use assets of A to Zee to satisfy claims

---

[124]  *Peterson v. Woldeyohannes*, 2009 WL 4686026, at *1.

[125]  *Peterson v. Woldeyohannes*, 2009 WL 4686026, at *2

[126]  *Peterson v. Woldeyohannes*, No. HHDCV040834966S, 2013 WL 3119729, at *3 (Conn. Super. Ct. June 3, 2013).  Note, this decision entered after the 2011 Case.

against the Debtor, a court must have considered the impact of reverse piercing on shareholders and creditors and whether adequate remedies were available at law.  *See, McKay,* 332 Conn. at 440.  No evidence this was done is in the record.

### Property of the Estate in the 2018 Case

Here, the Chapter 7 Trustee had no authority to sell anything other than what Hannah Woldeyohannes owned on September 25, 2018, the date the order for relief entered in the 2018 Case.  The Chapter 7 Trustee was confronted with conflicting information about the Debtor's ownership of an interest in A to Zee.  On the one hand, the 2011 Case included bankruptcy schedules asserting a 25% ownership interest in A to Zee, several state court decisions were premised on the Debtor owning a 100% interest in A to Zee, and the Debtor was listed with the Secretary of the State for the State of Connecticut as having a continuing role in A to Zee as the Managing Director as of September 25, 2018.

On the other hand, the Debtor's bankruptcy schedules filed under penalty of perjury in the 2018 Case claimed the Debtor had no ownership interest in A to Zee since 2006 – a fact not supported by other courts' decisions and contrary to her prior sworn statements in the 2011 Case.  On this record, the Chapter 7 Trustee appropriately considered the Creditor's offer to purchase whatever interest the Debtor had in the LLC, even if it was nothing.  No one – including the Debtor or the Woldeyohannes siblings who have appearing counsel in this case – presented a cogent explanation of how or precisely when the Debtor sold or transferred the 100% interest in A to Zee or disassociated from A to Zee.

This left the Chapter 7 Trustee with a hypothetical, potential ownership interest of the Debtor in A to Zee to sell, but with no interest in real property owned by A to Zee.

<u>*No Real Property Was Sold Free and Clear of Liens*</u>

The Chapter 7 Trustee identified the creditors of the bankruptcy estate (Hanson Guest and Alyssa Peterson) and the City of Hartford and the Metropolitan District in the caption of the Sale Motion, presumably as counterparties or respondents to the Sale Motion.  The inclusion of the City of Hartford and the Metropolitan District is unexplained, and makes no sense unless intended to address municipal, tax or water liens against real property.  But the 2018 Case's bankruptcy estate included no real property.  The Sale Order does not include specific "free and clear" language consistent with Bankruptcy Code § 363(f) in the decretal paragraphs.  The Chapter 7 Trustee credibly testified that it was her intent, consistent with this court's understanding, that no real property owned by A to Zee was being sold.

Had the relief granted remained consistent with the relief sought in the Sale Motion (*i.e.,* confined to selling an interest in an LLC and not including "free and clear" language in the order since no liens or encumbrances on the LLC interest being sold were identified) it appears notice would have been sufficient.  *See,* Fed.R.Bankr.P. 2002.  The sale resulted in proceeds of $5,000 for the estate, which was subsequently used to pay the only creditor of the estate other than the purchaser (Hanson Guest) and the Trustee's administrative claim pursuant to Bankruptcy Code § 329.

The court recognized the Chapter 7 Trustee intended to sell the Debtor's interest in A to Zee, a membership interest, rather than an interest in real property.[127]  The court entered the Sale Order intending it to align with the Sale Motion, authorizing the Chapter 7 Trustee to sell only the Debtor's interest in A to Zee, whatever that interest might be,

---

[127]    ECF No. 282, p. 176, Ln. 14-16, p. 181, Ln. 10-11

without representation or warranty.  No divesting or "free and clear" language was included in the decretal paragraphs of the Sale Order, although the erroneous reference to § 363(f) did appear in the preamble.  Because the Trustee failed to propose divesting language and failed to identify possible lienholders on the personal property she sought to sell – the membership interest in A to Zee – the Sale Order did not have the effect of eliminating liens.

### The 2018 Case Will Be Reopened

The court will *sua sponte* reopen the 2018 Case for a limited purpose.  Because the case has been closed, the former Chapter 7 Trustee has no authority to act as the case trustee.  The court will therefore direct appointment of a Chapter 7 Trustee by the Office of the United States Trustee.

The reasons to reopen a closed case are to administer assets, to accord relief to the debtor, or for other cause.  11 U.S.C. § 350(b).  "While the Code does not define 'other cause' for purposes of reopening a case under section 350(b), the decision to reopen is discretionary with the court, which may consider numerous factors, including equitable concerns."  *In re Woldeyohannes*, 2023 WL 8717014, at *7 (citing 3 COLLIER ON BANKRUPTCY ¶ 350.03).

Bankrutpcy courts consider many factors in determining whether to reopen a case, including whether there would be no relief if the case were not reopened.  Here, this factor weighs in favor of reopening the case.  Courts also examine whether a non-bankruptcy forum has jurisdiction to determine the issue and whether the bankruptcy court determined a state court would be the appropriate forum.  Both of these factors weigh in favor of reopening the 2018 Case because bankruptcy courts retain jurisdiction to enforce and interpret their own orders, this is the right forum to do so, and enforcing and

52

interpreting its own order is what the bankruptcy court must do here.  *In re MF Glob. Holdings Ltd.*, 561 B.R. at 623.

The length of time the case was closed is another consideration.  Here, when weighed against the gravity of the harm if the erroneously stated Sale Order is not corrected, the passage of time is awarded little weight.  AWET waited nearly a year after the 2018 Case was closed before moving to reopen the case and more time passed as a result of the appeal.

Here, the remaining factors appear to be neutral.  No party would suffer undue prejudice should the court grant the motion to reopen.  The Creditor faces clarification of the Sale Order to remove a benefit to which she was not entitled, which is not prejudicial.  The Creditor appears to have bargained for, and the Chapter 7 Trustee intended to sell, the limited liability company interest as defined in the Sale Motion, which is all the Trustee had the ability to sell.  Finally, the benefit to the Debtor is neutral.  The Debtor will not receive a benefit and the court's decision will not prejudice her.

On this record, it is easy to conclude there is cause for the court to reopen the case for a limited purpose.

### *The Sale Order Will Be Amended Pursuant to Fed.R.Bankr.P. 60(a) and 60(b)*

Once the case is reopened and a Chapter 7 Trustee is appointed, the bankruptcy court will address the remaining issues identified by the district court and suggested by this record, including identification of the property of the bankruptcy estate the Chapter 7 Trustee proposed to sell, whether and to what extent the sale motion should have been granted, what the Sale Order's terms and conditions should have been, if any, and the process going forward.

A court may modify or amend an order pursuant to Rule 60(a) or 60(b) of the Federal Rules of Civil Procedure, made applicable here through Federal Rule of Bankruptcy Procedure 9024.  Here, there is cause to review and revise the Sale Order under each section of Rule 60.  Pursuant to Rule 60(a), a court may correct a clerical error on its own whenever one is found.  Fed.R.Civ.P. 60(a).  An amended order may enter without reopening the case where the court is correcting clerical errors in judgments, orders, or other parts of the record therein caused by oversight or omission pursuant to Rule 9024.  Fed.R.Bankr.P. 5010, Notes of Advisory Committee; *see McGuffin v. Barman (In re BHB Enters., LLC)*, Nos. 97-01975-W, 97-80227-W, 2006 Bankr. LEXIS 3254, at *8 (Bankr. D.S.C. Nov. 7, 2006) (correcting clerical error without reopening case), *aff'd, Baumhaft v. McGuffin*, No. CIVA 4:06CV3617 RBH, 2007 WL 2783404, at *5 (D.S.C. Sept. 21, 2007), *aff'd,* 283 F. App'x 120 (4th Cir. 2008) (unpublished).

There is also cause to correct the Sale Order pursuant to Fed.R.Civ.P. 60(b).  The Sale Order's statement that real property was to be sold when the estate owned none, and the suggestion that liens on real property were being eliminated by the Sale Order are both important reasons to amend and restate the Sale Order.  The situation here is like the "exceptional circumstance" envisioned by *In re Wright* and *Insurance Co. of North America.*  Rule 60 also encompasses instances such as this where the court seeks to conform the written judgment to the judgment rendered by the court.  *Dudley ex rel. Est. of Patton,* 313 F.3d at 671 (Sotomayor, C.J., concurring).

Because the Sale Order must be revisited, the case will be reopened.

54

### *Summary of Determinations After Remand*

Because fairly straightforward questions were remanded and this decision is lengthy, the court offers this brief summation of its conclusions. The District Court directed a determination of whether AWET held a valid mortgage on the real property (Condos). *In re Woldeyohannes*, 2023 WL 8717014, at *6. The court concludes AWET failed to meet its burden to establish the Mortgage was authorized and granted by members of A to Zee.

The District Court also directed the bankruptcy court to clarify what was sold to the Creditor, and whether the sale of non-estate property was appropriate. *In re Woldeyohannes*, 2023 WL 8717014, at *7. What was intended to be sold and what was described as having been sold in the Sale Order are different. The Trustee proposed to sell a remnant asset consisting of whatever interest the bankruptcy estate had, even if that interest was nothing, in A to Zee. The bankruptcy schedules acknowledged the lack of clear and consistent evidence regarding the Debtor's interest in and dissociation from A to Zee.

The court also concludes the Trustee did not intend to transfer an interest in the Condos so lienholders on the Condos were not necessary parties to be served with notice of the proposed sale. In answer to the District Court's question about whether the prior Mortgage holder, the Boatman Firm, received notice of the Sale Motion, the record does not reflect service on the Boatman Firm.

All other arguments made were considered by the bankruptcy court and determined to be without merit.

## VI.    *CONCLUSION*

For these reasons, the court will reopen the case *sua sponte* but will deny AWET's motion to reopen.  Accordingly, it is hereby,

**ORDERED**:  This Chapter 7 case, case number 18-21369, is reopened *sua sponte* for the limited purpose of determining, after notice and a hearing, the appropriate form of an amendment to the Sale Order consistent with the factual findings in this Memorandum of Decision and Order, pursuant to Fed.R.Bankr.P. 9024 and Fed.R.Civ.P. 60(a) and 60(b); and it is further

**ORDERED**: The United States Trustee is directed to appoint a Chapter 7 Trustee for this limited purpose; and it is further

**ORDERED**: AWET'S motion to reopen, ECF No. 152 and its motion pursuant to Fed.R.Bankr.P. 9024, ECF No. 153, are denied as moot; and it is further

**ORDERED**: Creditor Alyssa Peterson's motion to reopen, ECF No. 216, having been withdrawn at ECF No. 312, is moot; and it is further

**ORDERED:** The objection filed by Mussie Russom, Sofia Woldeyohannes, and Yodit Woldeyohannes to the Creditor's motions to limit evidence, ECF No. 223, is overruled as moot; and it is further

**ORDERED:**  Creditor Alyssa Peterson's Motion for Order Pursuant to 11 U.S.C § 105 is denied; and it is further

**ORDERED**: Creditor Alyssa Peterson's Amended Motion for Order, which objects to AWET's motion to reopen, ECF No. 294 is overruled as moot; and it is further

**ORDERED**: Creditor Alyssa Peterson's Request for Judicial Notice, ECF Nos. 295 and 304 are granted in part and denied in part.  ECF No. 295 requests the court take

56

judicial notice of testimony and evidence presented to the court regarding the motion that is the subject of this decision, and requests the court take judicial notice of certain legal contentions the Creditor raises in relation to the testimony and evidence she references. ECF No. 304 requests the court take judicial notice that the Creditor filed a motion to reopen the 2011 Case,[128] and for this court to acknowledge the 2011 Case held 100% of the interest in A to Zee and the Condos.  ECF No. 304 To the extent the Creditor requests this court to take judicial notice of a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned her Requests for Judicial Notice, ECF Nos. 295 and 304, are granted.  Fed.R.Evid. 201(b)(2), (d).  To the extent the Creditor requests any finding or conclusion inconsistent with this Decision and Order or asks the court to adopt her characterizations of legal consequences of other court orders, her Requests for Judicial Notice, ECF No. 295 and 304 are denied.

Dated this 19th day of September, 2024, at New Haven, Connecticut.



Ann M. Nevins
Chief United States Bankruptcy Judge
District of Connecticut

---

[128]   The Creditor's motion seeking to reopen the 2011 case was, as noted, later withdrawn.  2011 Case, ECF No. 214.